20 So.2d 528

**REEDY v. STATE.**

6 Div. 260.

Supreme Court of Alabama.

Jan. 11, 1945.

Rehearing Denied Feb. 1, 1945.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

W. E. Brobston, of Bessemer, for appellant.

366

tively, after having "mugged and slugged" (Reedy's expression) the hospital guard, escaped from the Gallinger Municipal Hospital, Washington, D. C., February 1, 1944, stole an automobile and made their way through several southern states to New Orleans, Louisiana, and back through Mississippi to Birmingham, Alabama, where on February 11, 1944, they abducted Mrs. Pearl Brasher, transported her in her own automobile to an isolated place near Bessemer, Alabama, and there robbed and raped her, then murderously attacked her with knives and left her for dead. Their eleven days' peregrination thus detailed was attended with a trail of various crimes, such as automobile thefts and purse-snatching to accommodate their desire for travel, and assaults and attempted assaults on females to satisfy their natural lust in this regard. This all appears from their several voluntary confessions made after their arrest, February 12th.

Other than the various criminal acts—certainly indicative of abnormality, but not uncommon to some criminals—there is nothing in the record evidencing the slightest tinge of mental unsoundness, except the testimony, later to be discussed, of experienced Washington psychiatrists, who knew the two while in the hospital there. On the contrary, the entire evidence, including the several confessions, other than this expert testimony, points clearly to their sanity, and reflects only the action of two young anti-socials on a rampage of crime and lust, perpetrated with superior dexterity, evincing the usual high cunning of the habitual criminal.

It is contended for this defendant that error prevailed in the action of the trial judge in refusing to appoint a sanity commission or to order a sanity hearing for him as is provided by § 428, Title 15, Code of 1940. Application to this end was made by defendant prior to trial and also pending it upon resting the case, thereby invoking the ruling complained of.

SIMPSON, Justice.

Daniel F. Reedy appeals from a death sentence following conviction of rape.

The main question presented for consideration arises under the issue of insanity which was interposed by the usual special plea, so only reference to the facts as are necessary to this consideration will be indulged in.

Reedy and his codefendant, Hockenberry, nineteen and twenty years of age respec-

The pertinent provision of said section, "if any person * * * under indictment * * * appears to be insane, the judge * * * must institute a careful investigation" into such person's sanity, is not mandatory but invokes discretionary action on the part of the judge. Such has been the holding as to § 425 of said Title (substantially an analogous statute) where the provision is that "it shall be the duty of the

presiding judge" to have the defendant transmitted to the Alabama Insane Hospital for observation, examination, etc. Burns v. State, ante, p. 135, 19 So.2d 450 (16).

Like construction has been placed upon § 426 of said Title where the duty is enjoined upon the trial court to inquire into the sanity of any person held in confinement under a felony indictment. Whitfield v. State, 236 Ala. 312, 182 So. 42; Rohn v. State, 186 Ala. 5, 65 So. 42; Granberry v. State, 184 Ala. 5, 63 So. 975.

The holding, therefore, must be that action under said § 428, looking to a preliminary inquiry into the defendant's mental condition, is vested in the sound discretion of the court.

■ But it is asserted that the court grossly and erroneously abused his discretion in this regard. Counsel argue that the insanity of the defendant was so clearly established by the depositions of the Washington alienists, which were submitted to the judge in support of the application for a sanity hearing, it was his manifest duty to order the inquiry.

This contention is unsustainable, other reasons aside, because inquiry into the defendant's mental condition is invited under the section if he presently "appears to be insane" after having been indicted. The record is entirely devoid of proof supporting such a thesis. On the contrary, the depositions referred to establish that when Reedy escaped from the hospital he was not of unsound mind, could distinguish between right and wrong as applied to rape and similar offenses (R. 250) and "was responsible for his acts" (R. 251). We cannot assume without proof that his condition was otherwise eleven days later when the crime was committed or, thereafter, at the time of trial.

■ Similar rationale should dispose of the argument for error in the refusal of a directed verdict and the denial of a new trial, premised on the contended insanity of the defendant at the time of the commission of the crime. The defense of insanity must be clearly proved to the reasonable satisfaction of the jury and the burden is on defendant to do so. Code 1940, Title 15, § 422; Boyle v. State, 229 Ala. 212, 154 So. 575; Lee v. State, Ala. Sup., 20 So.2d 471.[1] Counsel seem to confuse the defendant's moral obliquity with that insanity which in law will excuse a person of crime. The rule of criminal responsibility has long been established and adhered to in this state. Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193. It is firmly established that there is no recognition in our law of emotional insanity as an excuse for crime. Coffey v. State, 244 Ala. 514, 14 So.2d 122; 6 Ala. Dig., Criminal Law, ☞51. And much force must be conceded to the conclusion that the act in question was the outgrowth of evil emotions engendered by a long series of juvenile delinquencies and anti-social conduct.

■ In the absence of proof of insanity as will excuse him of crime, we may assume his mental condition on February 11th, when the offense was committed, to have been the same as on February 1st, when he escaped from confinement. It clearly appears from the depositions of his expert witnesses that this condition was merely psychopathic. He is described in the depositions as a "psychopathic personality," which is another way of designating a disordered personality, anti-social and criminal in tendency, superinduced by environment, long juvenile delinquency, etc.

Dr. Corretti, defense witness and on the hospital staff and a psychiatrist of thirteen years' experience, in announcing his conclusion that when accused escaped "he was of sound mind" and "responsible for his acts," testified that "Daniel F. Reedy is essentially a psychopathic personality, a psychiatric term employed to describe those persons who are essentially unstable, inadequate, frequently anti-social individuals who are immature emotionally, who have poor judgment, who are impulsive, and who do not adjust readily to their surroundings."

Dr. Joseph Gilbert, alienist and psychiatrist for the District of Columbia and chief of the Psychiatric Division of the hospital, with twenty-five years' experience, deposed similarly. It was his opinion also that on February 1, 1944, Reedy's condition was that of a psychopathic personality, described by him as "the fundamental and long standing disorder of personality characterized by instability in early life, delinquent tendencies and offenses during the juvenile years leading to more severe offenses as the chronological age increases and finally placement in an institution for

---

[1] Ante, p. 343

juvenile delinquents. This disorder of personality is characterized also by a lack of consistency of effort and a continued demonstration of poor judgment in the community. Such disorder of personality is known medically as psychopathic personality."

Neither of the two alienists was willing to substantiate the plea of insanity by any stronger proof than that such was Reedy's mental status on February 1st, nor would either opine what his mental condition was on February 11th, when the crime was committed.

This evidence falls far short of clearly establishing that at the time of the commission of the crime the defendant was afflicted with a diseased mind to the extent that (1) he did not know right from wrong as applied to the particular act in question, or (2) if he did have such knowledge, he, nevertheless, by reason of the duress of such mental disease had so far lost the power to select the right and to avoid doing the act in question as that his free agency was at the time destroyed, and (3) that, at the same time, the crime was so connected with such mental disease, in the relation of cause and effect, as to have been the product of it solely—which is the legal test. Parsons case, 81 Ala. 577, at pages 596, 597, 20 So. 854, 60 Am.Rep. 193.

If for discussion it should be assumed, though the evidence tends to the contrary, that when the offense was committed Reedy was in one of those so-called "psychotic episodes," it could not then be said, as a proposition of law, that the issue of his sanity, vel non, should have been withdrawn from the jury. Dr. Gilbert testified that during Reedy's last confinement in Gallinger "he would probably be able in a general way to distinguish between right and wrong, as applied to rape or similar criminal offenses," and with respect to laboring under the duress of a mental disease, and his power to choose between right and wrong, that Reedy could select the right and avoid doing the act "with only limited impairment of conscious choice during the more severe expressions of his disordered personality." Significantly, note his described condition—disordered personality, not disordered mentality.

With the weight and tendencies of the evidence thus outweighing his claim of insanity, it must be concluded that the trial court acted with eminent correctness in refusing to direct a verdict for him or to grant a new trial.

The next insistence, that the confessions should have been excluded because not proven to have been voluntary, is also unsustainable. The duty rests upon the trial court to determine whether or not a confession is voluntarily made and unless it so appears to exclude it. But, though prima facie involuntary (and inadmissible) until proven not to be, confessions may appear to have been voluntarily made from the circumstances attending their narration. Godau v. State, 179 Ala. 27, 41, 60 So. 908; Dyer v. State, 241 Ala. 679, 4 So.2d 311. And "as the question is necessarily addressed, in the first instance, to the judge, and since his discretion must be controlled by all the attendant circumstances, the courts have wisely foreborne to mark with absolute precision the limits of admission and exclusion." Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 207, 28 L.Ed. 262. Determination rests upon the connection of the confession with the inducement and "they stand to each other in the relation of cause and effect. If it is apparent that no such connection exists, there is no reason for the exclusion of the evidence." Beckham v. State, 100 Ala. 15, 14 So. 859, 860. Giving the proposition that strict study which the gravity of the case demands, we are convinced that the evidence sufficiently established the voluntary character of the confessions as to warrant their admission.

Likewise do we regard as untenable the assertion of error in the introduction into evidence of the clothes worn by the victim and found in the automobile after the rape. This corroborated her testimony as to her disrobement before being ravished and was correctly admitted. Allford v. State, 31 Ala.App. 62, 12 So.2d 404; Robinson v. State, 243 Ala. 684, 11 So.2d 732.

Though such evidence be only cumulative and may tend to inflame the jury, its admissibility will not be affected if it sheds light upon a material inquiry or illustrates the transaction at issue. Floyd v. State, 245 Ala. 646, 18 So.2d 392; Weems v. State, 222 Ala. 346, 347, 132 So. 711, 713; Wilson v. State, Ala.App., 11 So.2d 563, 566.[1] The other wearing apparel of the victim was therefore also properly admitted under this rule of evidence.

[1] 31 Ala.App. 21.

So also, and for like reason, were the photographs of the scene proper evidence as tending to elucidate the material facts under inquiry. Swindle v. State, 27 Ala.App. 549, 176 So. 372, certiorari denied 234 Ala. 621, 176 So. 375. The photograph of the victim taken after the assault, though unsightly and only cumulative in character, was also admissible as tending to illustrate the gravity of the assault. Grissett v. State, 241 Ala. 343, 2 So.2d 399; Wilson v. State, supra.

The issue of insanity allows much latitude in the introduction of evidence of the defendant's acts, declarations and conduct prior and subsequent to the time of the commission of the alleged crime and such proof as will shed light upon this issue is relevant. Grammer v. State, 239 Ala. 633, 196 So. 268; Anderson v. State, 209 Ala. 36, 95 So. 171; Deloney v. State, 225 Ala. 65, 142 So. 432. Therefore, portions of the several confessions delineating Reedy's acts, declarations and conduct after his escape and until arrest were relevant on this question despite the fact that they embraced proof of the commission of other offenses. Such evidence, by detailed and accurate instructions of the court, was strictly limited to this purpose. There was, therefore, no error in permitting such proof, nor in allowing the solicitor to comment on it in argument to the jury.

Error is also sought to be rested upon an excerpt from the oral charge of the court to which no exception was reserved. The automatic appeal statute, General Acts, Regular Session, 1943, page 217, Code 1940, Tit. 15, §§ 382(1) to 382(13), does not authorize such a review, no exception having been seasonably taken. Easley v. State, ante, p. 359, 20 So.2d 519.

The special charges of the defendant were also correctly refused. Three are deserving of some comment.

Charges 1 and 2 were argumentative and invaded the province of the jury in pretermitting a discretion in the jury of weighing the fact hypothesized in the charges. The two cases (Clark v. State, 28 Ala.App. 448, 186 So. 778; Stewart v. State, 25 Ala.App. 266, 145 So. 162) cited as basis for the argument for error, while stating the proposition embraced in the charges, were dealing with matters of evidence. Abstract statements of law from judicial opinions do not always justify

their correctness when embraced in charges to the jury. Southern R. Co. v. Hayes, 198 Ala. 601, 73 So. 945; Torian v. Ashford, 216 Ala. 85, 112 So. 418.

Moreover, the charges may be denounced as inapposite and their refusal entirely without prejudice. Actual commission of the crime seems not to have been a controverted issue, the sole question being the sanity or insanity of the defendant. So, to refuse the charge could not possibly have resulted in prejudice to the defendant, while to give it might have resulted in confusing and misleading the jury. "A charge should be refused the only tendency of which would be, if given, to throw doubt or discredit on a fact in the case established without conflict of evidence." Rose v. State, 117 Ala. 77, 80, 23 So. 638, 639.

Charge 25 was refused without error for the reason that the legal test of irresponsibility for crime is not that defendant be of unsound mind, but the mental incapacity at the time to discriminate between right and wrong with regard to the crime charged or the inability by reason of a mental disease to refrain from doing wrong. Parsons case, supra.

The trial was carefully conducted and the court, with scrupulous effort sought to preserve to the defendant every substantial right and to transact the proceedings free of prejudice, which impresses us as having been done. Discovering no prejudicial error, the judgment is affirmed.

Affirmed.

All the Justices concur.