293 So.2d 483

**James E. PIERCE**

v.

**STATE.**

**6 Div. 205.**

Court of Criminal Appeals of Alabama.

Sept. 28, 1973.

Rehearing Denied Oct. 30, 1973.

Robert R. Bryan, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark and Don C. Dickert, Asst. Attys. Gen., for the State, appellee.

ALMON, Judge.

Appellant was convicted of first degree murder and sentenced to death by electrocution.

The evidence presented during the trial of this cause reflects the commission of multiple felonies by a person or persons obviously depraved in the most reprehensible magnitude.

The body of the decedent, Mrs. Florence Dorsey, was found in her bed sometime around 9:00 p.m. on March 7, 1968. Decedent was found with her ankles and hands bound and her mouth gagged with strips of white cloth appearing to have been torn from a bed sheet. The deputy coroner examined the victim's body and subsequently ordered a post mortem examination to be conducted by a pathologist. The autopsy revealed four cardiacal lacerations, a severed trachea, a lacerated common carotid artery, lacerated ribs, lacerated vagina, dilated rectum, and human spermatozoa in the vagina and rectum.

According to the examining pathologist death resulted from hemorrhage occasioned by one or more of the four stab wounds which penetrated the heart. The autopsy led the expert to conclude that the death weapon was a sharp instrument eight to twelve inches in length. There was a variance in the respective testimony of the pathologist and the deputy coroner as to the period of time intervening death and examination of the body. The deputy coroner estimated that decedent died about twelve to fifteen hours prior to his examination at about 10:00 p.m. on March 7, 1968; whereas, the pathologist concluded that decedent's death could have occurred from six to forty-eight hours preceding the post mortem on March 8, 1968.

A cloud of suspicion hovered over appellant after a service station attendant observed him leaving Mrs. Dorsey's dwelling carrying a portable television set and a suitcase. The appellant proceeded from decedent's house across the street, entered into a brief conversation with the service station defendant, and subsequently embarked upon a taxi cab journey.

When appellant was arrested, he was in possession of numerous articles identified by uncontroverted testimony as having belonged to Mrs. Dorsey. One of the items was a dull letter opener, which according to the State's disputed expert testimony, could have been the murder weapon. Police officers lifted the appellant's fingerprints from several articles present in the victim's house at the time the body was discovered.

The State's evidence showed that the appellant attempted to pass several checks exhibiting the forged signature of decedent as drawer. Each of these attempts was made within a few days of the discovery of the body. Expert testimony tended to show that the appellant had perpetrated the forgeries. Several witnesses testified that appellant had driven the decedent's automobile a few days prior to March 7, 1968.

I

Appellant charges reversible error in the trial court's refusal to admit into evidence a letter addressed to his expert witness by a psychologist. His primary contention is that the letter was admissible as a business record under Tit. 7, § 415, Code of Alabama 1940, Recompiled 1958. We hold that the letter was properly rejected inasmuch as it was replete with opinions and conclusions of a putative psychologist whose qualifications appear nowhere in the record. Opinions are generally inadmissible when emanating from the

mind of one not duly qualified as an expert. Cox v. State, 280 Ala. 318, 193 So.2d 759; Horn v. State, 22 Ala.App. 66, 111 So. 452.

■ § 415, supra, is merely a statutory exception to the hearsay evidence rule and in no way abrogates the opinion evidence rule. Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378; Greathouse v. Credit Bureau, Inc., 279 Ala. 524, 187 So.2d 565.

## II

■ The record reveals an unresponsive answer during direct examination of a State rebuttal witness. The witness, a member of the Bar, incorrectly responded to the prosecution's question by testifying to an extra-judicial conversation between himself and defense counsel. Appellant contends that he was prejudiced by testimony that defense counsel importuned counsel for codefendants (the witness) to advise his clients to take the Fifth Amendment when called to testify against appellant. Defense counsel objected to the unresponsive answers but failed to elicit a ruling from the trial court. We cannot correct the imperfection in testimony without a ruling by the trial court. Early v. State, 31 Ala.App. 488, 18 So.2d 873; Bethune v. State, 26 Ala.App. 72, 153 So. 892; Crawley v. State, 22 Ala.App. 336, 115 So. 697.

## III

■ Appellant insists that he was denied the constitutional right to compulsory process for the *attendance* of witnesses at trial. He attempted to subpoena the superintendent of the State mental hospital, but became frustrated in such attempt when the superintendent exercised the privilege codified at Tit. 45, § 226, Code, supra. The constitutional right involved here is the right "to have compulsory process for obtaining witnesses in his favor." Amendment Six, United States Constitution; Article 1, § 6, Constitution of 1901, Alabama. It is noteworthy that the express letter of the constitutional guarantee makes no allusion to the *compulsory attendance* of witnesses. We hold that § 226, supra, provides a constitutional alternative to compulsory attendance at trial, such alternative taking the form of pretrial deposition. See Sheppard v. State, 49 Ala.App. 398, 272 So.2d 605.

## IV

In support of the insanity plea, defense counsel attempted to have his expert witness perform an in-court demonstration on the body of the appellant. We do not find the abuse of discretion which is necessary to show reversible error in this regard. Campbell v. State, 55 Ala. 80.

## V

■ We find no reversible error in the trial court's having instructed the jury concerning conspiracy. If, as the appellant contends, the charge was abstract, there is no reversible error in view of the absence from the record of appellant's exception to the oral charge. Passmore v. State, 47 Ala.App. 189, 252 So.2d 115.

## VI

■ During the trial of this cause, the prosecutor became provoked at the demeanor of defense counsel, walked up to defense counsel, placed his hand somewhere on counsel's person, and made certain vindictive remarks; whereupon the learned trial court promptly ordered a recess. Defense counsel not only failed to move for a mistrial but also stated during an in-chamber colloquy that he had nothing to say of the incident. We need not decide whether or not a mistrial should have been granted. We hold that counsel's failure to move for a mistrial precluded his raising the incident as a ground for new trial. Such failure must be construed as a strate-

gic consideration whereby the appellant attempted to secure the luxury of two trials in the event the first trial culminated in an unfavorable verdict. Moreover, the posture of the record is not such as to persuade us that the said trial conduct prejudiced either the defendant or the State.

## VII

■ Appellant presented a considerable quantity of medical testimony in support of his insanity plea. A verdict of guilty necessarily concludes the issue of insanity at the time of the commission of the offense where the evidence fails to preponderate in such a manner as to indicate palpable error. Bridges v. State, 284 Ala. 412, 225 So.2d 821; Stewart v. State, 38 Ala.App. 365, 84 So.2d 658; Knight v. State, 273 Ala. 480, 142 So.2d 899; Carr v. State, 43 Ala.App. 642, 198 So.2d 791.

Though the finding of sanity at the time of the offense should not be disturbed, we conclude that due process did not attend the trial proceedings. Appellant was committed to the State mental hospital pursuant to court order, such confinement lasting from December 6, 1968, until April 13, 1970. The trial commenced on September 15, 1970, and lasted some ten days. During the trial of the cause, defense counsel propounded a question of his expert which sought to establish that appellant was incompetent to stand trial. The following colloquy occurred during the trial in chief:

"Q. (By defense counsel) . . . After your interpretation made of James Pierce in 1970, what is your opinion concerning whether or not he appreciates the charge against him, in other words, what is going on here in this trial.

"MR. BOWEN: We object to the form of the question, whether he appreciates.

"THE COURT: Sustain the objection.

"MR. BRYAN: I am going into the question of whether or not the defendant is competent to stand trial.

"THE COURT: What?

"MR. BRYAN: I am going into the question of whether or not the defendant is competent to stand trial.

"I made this motion earlier in the trial and said that I would follow it up with valid testimony.

"THE COURT: You mean, this is one of the motions heard before Judge Watson?

"MR. BRYAN: No, sir. This is an oral motion.

"THE COURT: Is there any precedent in law for this?

"MR. BRYAN: I believe the defense has a right to—

"THE COURT: I am asking you by way of court decisions.

"MR. BRYAN: I have not researched it.

"THE COURT: I don't know that it is improper, but I have never heard of such a proceeding in the middle of a trial.

"You wait until the trial is almost over with, and you want to· get into evidence whether or not someone is competent to stand trial as a part of the trial proceeding itself.

"If you are able to get any authority for that by the morning, you let me have it in the morning, the first thing, and I will rule.

"Otherwise, I am going to sustain the objection.

.    .    .    .    .    .

"THE COURT: If it is your contention this would throw some light on this man's mental condition back at the time of this offense, that is all right, but I am

not going to rule on this question that you may not go into any question such as you proposed awhile ago and then let you turn around and offer evidence on it."

In addition to the foregoing oral motion, appellant filed a written motion seeking a declaration that he lacked the competency to assist in his defense. This motion antedated appellant's confinement in the mental hospital which commenced on December 6, 1968. There was no further written motion bearing on appellant's present competency to stand trial.

■ The most economical and expeditious procedure to establish competency to stand trial would consist of a pretrial motion seeking the application of Tit. 15, § 426, Code, supra. However, our interpretation of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, convinces us that appellant had a right to establish even during trial his incompetency to stand trial. Logically, it would appear that a party waives his right to object to being put to trial on ground of incompetency when he sits idly by and fails to seek a pretrial determination. We are, however, bound by the unequivocal compulsions enunciated in Pate, supra. In rejecting the waiver concept, the United States Supreme Court in Pate observed:

"[2, 3] The State insists that Robinson deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial. See Taylor v. United States, 282 F.2d 16, 23 (C.A. 8th Cir. 1960). In any event, the record shows that counsel throughout the proceedings insisted that Robinson's present sanity was very much in issue. He made a point to elicit Mrs. Robinson's opinion of Robinson's 'present

sanity.' And in his argument to the judge, he asserted that Robinson 'should be found not guilty and presently insane on the basis of the testimony that we have heard.' Moreover, the prosecutor himself suggested at trial that 'we should have Dr. Haines' testimony as to his opinion whether this man is sane or insane.' With this record we cannot say that Robinson waived the defense of incompetence to stand trial." 86 S.Ct. at 841.

The rationale of Pate, supra, is fundamentally irrational. We find a defective premise in the logic upon which the conclusion is reposed that an incompetent cannot waive rights. An indigent criminal defendant speaks not of his own volition but through a duly appointed effective counsel. Pate presents a costly and dilatory exception to the general rule that a client is bound by the acts and omissions of his effective counsel. It takes no great legal aptitude to foresee the abuses of judicial process possible under the Pate rule. For example, the defendant may remain mute through the entire trial proceedings and, if he feels his chances are slight, then raise incompetency to stand trial as a ground for suspension of the trial proceedings. If defendant feels his chances are good, he would fail to raise incompetency and hope for acquittal. This strategy is, of constitutional necessity, masterminded by effective counsel who surely must have the mental competency to effect a waiver. The competence of counsel should be vicariously imputed to the appellant; however, the supremacy clause of the United States Constitution dictates that we follow Pate, supra, irrespective of our predisposition to find a valid waiver.

Appellant called a large number of medical experts and laymen whose testimony tended to show that he had suffered mental infirmities between 1966 and the time of trial. He contended at the close of the State's case and during his own case in chief that his competency to stand trial was in issue.

Appellant's battery of medical experts included the following persons: Dr. Haruki Watanaba, a Specialist in Opthalmology, who had been educated in Tokyo, done an internship at Cook County General Hospital in Illinois, taken a one year training course in neurology from the University of Vermont, and served a four year residency in Opthalmology at the University of Alabama Medical Center; Dr. Lucretia Ann Little, who graduated from the University of Alabama Medical School and spent three years residency specializing in psychiatry; Dr. Thomas G. Lamkin, a resident Opthalmologist at University of Alabama Medical School; Dr. Samuel C. Little, a professor in neurology and electroencephalography at the University of Alabama Medical School, whose specialized medical training and practice began upon his graduation from medical school in 1939; Dr. Herbert W. Eber, a professor and clinical psychologist practicing in Birmingham and Atlanta, Georgia; Dr. Henry Spira, a psychiatrist from the University of Alabama Medical Center; and Dr. James A. Brussel, a specialist in neurology and psychiatry, whose varied experience in practice dates back to 1929.

Evidence offered in favor of appellant tended to show that he had been involved in an automobile wreck in 1966 in which he suffered trauma to the area around the right eyesocket. Appellant was at that time examined by several of the medical experts who testified during his case in chief. The testimony revealed that appellant suffered a severe trauma from the wreck which necessitated the removal of the right eyeball and which probably resulted in a chronic brain syndrome. According to medical testimony, there was a strong indication that the trauma occasioned a frontal lobe involvement of a permanent nature. I. Q. tests indicated that appellant's mental age was approximately that of a child nine to ten years of age. Further examination of appellant indicated an advanced condition of arteriosclerosis. The various examinations spanned the period between 1966 and the time of trial.

The results of an E.E.G. examination conducted shortly before trial showed delta wave patterns, a phenomenon indicating inter alia, chronic brain syndrome.

The medical testimony tended further to establish the conclusion that appellant would not have significantly recovered from the effects of the brain trauma if there has been a frontal lobe involvement, damaged nerve cells in the brain or other form of chronic brain syndrome. In any event, the appellant's prognosis with regard to his mental condition was extremely poor after the accident. From the expert testimony, it appears that a chronic brain syndrome involving frontal lobe impairment affects a person's memory, judgment, orientation, and sense of social responsibility. Thus, it would appear that such a snydrome would seriously affect a person's competency to stand trial, to-wit: his ability to assist in his defense.

The lay witnesses each testified that appellant appeared to be insane at various times intervening the wreck and the time of trial. Several police officers testified that appellant, at the time of arrest, uttered certain irrational statements and threats.

■ We feel that the evidence adduced at the trial is much stronger than that offered in *Pate*, supra. In *Pate* there were only four lay witnesses (three of whom were related to the accused by consanguinity and the other being a close family friend) who testified to matters tending to show competency. In the case sub judice, there was an overwhelming quantity of medical testimony showing a history of mental infirmity. We feel that the evidence below was sufficient to create a "bona fide doubt" as to appellant's present competency. Such bona fide doubt existing, the trial court should have suspended the trial proceedings *sua sponte* pending a hearing and determination of the competency issue. *Pate*, supra.

Pursuant to *Pate*, supra, the judgment of conviction is hereby suspended pending a

jury determination of competency to stand trial, such question to relate back to appellant's condition at the time of trial. If the appellant is found to have been competent to stand trial and this Court is so notified, the judgment will be affirmed except insofar as the imposition of the death penalty. Hubbard v. State, 290 Ala. 118, 274 So.2d 298. If a hearing as indicated is not held or if after a hearing the appellant is determined to have been incompetent at the time of trial, then the trial court shall notify this Court and the judgment will be reversed and the cause held in abeyance until such time as appellant is duly adjudged competent to stand trial.

Judgment suspended. Remanded with directions.

CATES, P. J., and TYSON and HARRIS, JJ., concur.

DeCARLO, J., dissents.