304 So.2d 239

**Bobby Joe SCHULL**

v.

**STATE.**

**8 Div. 450.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Rehearing Denied Oct. 29, 1974.

Lewis H. West, Decatur, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Schull was convicted of rape and sentenced to life imprisonment. With retained counsel present, he was first arraigned on August 14, 1973. The indictment was read and explained to him and he pleaded not guilty and not guilty by reason of insanity. The case was set for trial on August 24, 1973, and continued by agreement. The case was passed several more times and finally came on for trial on September 24, 1973, at which time appellant was re-arraigned. Again the indictment was read and explained and appellant withdrew his former plea of not guilty by reason of insanity. The case went to the jury on a not guilty plea.

The facts are sordid in the extreme. This is one of the most detestable, revolting, and horrible sex crimes imaginable. We are here dealing with an over-sexed ex-convict, who is a sex deviate and pervert.

Between nine and ten o'clock on the night of June 23, 1973, the prosecutrix and her nine-year-old daughter got in a pick-up truck at their home at 905 Austin Street, Southwest, in Decatur, Alabama, and drove to Tommy Shur-Save Market on Carridale Street a few blocks from their home. The prosecutrix parked in front of the market and remained in the truck while her daughter went inside to make a few purchases. While in the store, the daughter saw a neighbor and his daughter shopping. After ten or fifteen minutes, she returned to the truck where her mother was waiting. As she approached the truck, she saw the neighbor and his daughter drive off. She got in their truck and closed the door and was showing her mother the items she had purchased. Suddenly and without warning a man jerked the truck door open on the passenger side and got in the truck. He put a knife to the little girl's throat and ordered the mother to drive away. She protested and said she had to go back in the store and he told her she had better do what he told her to do, saying, "Do you want your daughter dead or alive?" She cranked the truck and appellant directed

her what streets to turn on and they finally wound up at an abandoned house in the woods. During the trip, appellant kept the knife on the girl's throat. When they got to the abandoned house, appellant ordered prosecutrix to turn off the motor and the lights and she told him no, that she was going to leave. Appellant then and there threatened their lives and ordered the mother and daughter to get out of the truck. They got out and with drawn knife, appellant ordered them in the house and led the little girl in by the hand. He carried them in a room and told prosecutrix that he was going to — her. He forced his private into her rectum for his first orgasm.

Appellant then told her to take her clothes off and she removed everything but her bra. He took her by the arm and forced her to lie on the bare floor. She fought him but was subdued by his superior strength and he raped her. He then told her to suck him and she told him she could not. He kept asking her if she wanted her daughter dead or alive. He forced her to take him in her mouth. After that act was completed, he forced the little girl to lay on the floor by her mother and he made the little girl suck him also. He then made her remove her panties and he put his mouth on her vagina. Appellant then got back on top of the prosecutrix and had sexual relations for what seemed to her to be an endless period of time. He made both the mother and daughter put their clothes back on and get in the truck. He directed prosecutrix where to drive. He told her if she reported this to the police that he would get her and her daughter and she told him she would not go to the police.

While driving under his directions (he was sitting next to her on the return trip), she had to stop for a traffic light. She turned to him and asked him where did he want to get out. He turned to her and said to keep driving. During this conversation, she got a good look at him. She noticed that he had long sideburns and a prominent mole on his right cheek. His hair was brownish in color and long in the back. She smelled the odor of alcohol and it was strong. He was filthy and stunk. She continued to drive and came to a stop sign and there was a street light there. Appellant got out and held the door open and looked prosecutrix directly in the face and told her to remember what he said about not going to the police. During this period of time, she got another good face-to-face look at appellant. At trial she made an in-court identification and pointed to the defendant as the man who had done these awful things to her and her daughter. She told the court and the jury that she was positive in her identification and did not have the slightest doubt that she was looking at the guilty party.

The neighbor who was in the market with his daughter when prosecutrix's daughter entered the store fully corroborated the testimony of prosecutrix and her daughter as to their presence at the market on the occasion in question. The neighbor testified that as he left the store to go to his pick-up truck, he noticed a man leaning on an automobile in the parking lot. He passed within eight (8) feet of the man and spoke to him. He described the man as being five feet six or seven and he had long sideburns and long hair in the back. Three days later he saw this man in a line-up at the jail and identified him as the man who was leaning on the automobile as he went to his truck. He, too, made a positive in-court identification of appellant.

Appellant did not testify but offered alibi witnesses. These witnesses were his mother, step-father, sister, a cousin by marriage, two bingo playing friends of his mother's, and a married woman with whom appellant was having an affair while she was separated from her husband. This woman had gone back to her husband at the time she testified for appellant, but freely admitted dating him and that she was with him on the night and the times prosecutrix testified that she and her daughter were being tortuously and brutal-

ly assaulted in the abandoned house in the woods. Had the jury chosen to believe these alibi witnesses, a not guilty verdict would have been in order but the jury rejected the testimony of these witnesses in toto as being unworthy of belief. The conflicting testimony was for the jury and the jury alone.

Prior to trial appellant filed a motion, signed by his attorney, seeking to have him sent to Bryce Hospital for observation and examination by the staff of that hospital to determine his mental condition in relation to his criminal responsibility. A full hearing was had on this motion.

Only two witnesses testified at this hearing in behalf of appellant, a half sister and a cousin. We glean from their testimony that appellant had been in mental hospitals in Michigan and Louisiana for short periods of time. On two occasions he was in Bryce Hospital but the period of time is not shown. He had been in prison in Alabama for forgery and rape. He was paroled in April, 1973, and in three months committed the rape made the basis of this appeal.

No documentary evidence was produced to confirm the testimony of his sister and cousin that appellant was ever actually in any mental institution. In the main their testimony was the rankest kind of hearsay. At the conclusion of the hearing, the court denied the motion.

It has been many times declared by the appellate courts of this state that the statutory provisions for investigation into a defendant's sanity are not mandatory, but such proceedings are addressed to the sound discretion of the trial judge. Krappatsch v. State, 44 Ala.App. 549, 216 So.2d 188; Reedy v. State, 246 Ala. 363, 20 So. 2d 528; Pace v. State, 284 Ala. 585, 226 So.2d 645; Barnett v. State, 51 Ala.App. 470, 286 So.2d 876, certiorari denied, 291 Ala. 773, 286 So.2d 890.

The testimony on this issue was wholly insufficient to create a reasonable doubt, or any doubt, as to the sanity or competency of appellant within the rule announced in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Pierce v. State, 52 Ala.App. 422, 293 So.2d 483.

Appellant complains that he was not served with a copy of the venire drawn for the week set for his trial, nor was he served with a copy of the indictment. No demand was ever made for a copy of either. When the case was called for trial, appellant's counsel announced he was ready for trial. We have pointed out that appellant was arraigned on two different occasions and each time he was arraigned the indictment was read and explained to him in the presence of his lawyer. More than thirty days elapsed from the date of the first arraignment to the second one which was on the day of trial.

Article 1, Section 6 of the Alabama Constitution provides, "That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; . . . .".

It is well settled by all the courts in the land that constitutional rights may be waived if the waiver is voluntarily, knowingly and intelligently made. The failure to make demand for a copy of the venire and the indictment in this case was an effective waiver of his rights to such copies. Robinson v. State, 44 Ala.App. 206, 205 So.2d 524; Howard v. State, 146 Ala. 149, 41 So. 301.

We have found no error in this record that injuriously affected the substantial rights of appellant and the case is due to be affirmed.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., dissents.