Lewis & Hornsby, Dothan, for appellant.

310 So.2d 235

**Bobby Joe CUNNINGHAM**

**v.**

**STATE.**

**4 Div. 304.**

Court of Criminal Appeals of Alabama.

March 18, 1975.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Appellant was indicted by the Houston County Grand Jury on March 22, 1974, on a charge of first degree murder for killing Betty Jean Jackson by shooting her with a pistol. A Jury found appellant guilty of murder in the first degree and fixed his punishment at life imprisonment.

The evidence presented by both the State and the Defense at trial proves without question that the appellant killed Betty Jean Jackson. The killing arose out of an argument between appellant and Mrs. Jackson over possession of the deceased's car keys. The killing occurred on the front porch of Mrs. Jackson's apartment and was witnessed by her fourteen-year-old daughter, who testified that during the argument over the car keys, the appellant left her mother's apartment, went to his car and returned with a pistol and shot her mother in the forehead between the eyes. Another daughter and her boyfriend were present during the argument, but when appellant returned with the pistol, they ran from the house to a neighbor's residence and called the police. They heard the gunshot and saw the appellant leaving with the pistol in hand, however, they did not witness the actual shooting.

An upstairs neighbor, Winona Beechman, testified that she heard the deceased tell appellant not to point the gun at her, and seconds later heard the shot.

The State put on police officers who had answered the call to the scene of the shooting and had observed the body. Another Dothan police officer, Larry Cook, testified that he left the scene of the shooting in search of the appellant and found him a short distance away behind a church lying under some plum trees. He stated that the appellant had a .22 caliber pistol tucked in the front of his trousers. He smelled alcoholic beverages on the appellant, but did not know if he was drunk. Dothan Police Officer Eulon Holland testified that he was searching for the appellant and was called by Officer Larry Cook to where he had the appellant apprehended. He stated that Officer Cook showed him the gun he had taken from the appellant.

Dothan Detective W. R. West testified that he examined the body of the deceased. He stated that Officer Larry Cook turned a pistol over to him in this case, and he carried it to Enterprise to the crime lab. Detective West said he interviewed the appellant at the police station, and appellant gave him a statement. The court excused the jury, and the Defense counsel took the witness on voir dire examination. The witness stated that he read and explained the *Miranda* warning to the appellant and asked him if he understood what it meant. He said the appellant answered in the affirmative, and he believed him to understand those rights. There was a showing by the State that the statement was given voluntarily without coercion and with no offer of reward on the part of Detective West. At the conclusion of the voir dire examination, Defense counsel made the following motion:

"MR. BATES: Your honor, we would like to move at this time that this statement be excluded on the grounds that this man was insane at at (sic) that time and not capable of rationally giving a statement?

"THE COURT: Overruled. Bring the jury."

In the presence of the jury, the State again laid the predicate for admission of the statement without objection by the De-

fense or motion to exclude at that time. When the witness was asked what statement was made by the appellant, he replied:

"A. I asked him what his full name was and he said Bobby Joe Cunningham; the next wquestion (sic), 'What is your home address,' '306 Harden Street, Opp, Alabama.' Next question, 'What happened tonight, 3/10/74, between you and Betty Jackson?' Answer: 'Me and her were arguing. I went to my car got my gun and came back and shot and killed her.' Next question, 'Did Betty have a weapon of any kind?' Answer: 'No.' End of statement."

Defense counsel took Detective West on cross examination, and the State took him on redirect examination, and without further objection or motion to exclude the State's evidence, the State and the Defense agreed on admitting into evidence a report of the autopsy and a ballistics report from the State Department of Toxicology and Criminal Investigation. At that time, the District Attorney announced, "The State rests."

·The Defense called as a witness, Marilyn Riley. She stated that she worked for appellant at Gibson Products, that she knew his general reputation in the community for peace and quietude, and such reputation was good. She testified that she knew the defendant bought clothes for Betty Jean Jackson and her girls and on occasion took them places.

Annie Jean Davis testified for the Defense next. She stated she was the cousin of Bobby Joe Cunningham, and knew his reputation in the community for peace and quiet and that it was good. On cross examination, she stated that she lives in Opp, Alabama, and the appellant was living in Dothan, but she knew his reputation in the community as, "He used to stay over in Opp, before he moved here."

Bobby Joe Cunningham, the appellant, took the witness stand in his own behalf. He stated on the night of the shooting, he was at the home of the deceased. He said Kenneth Boger and Annie Lois Jackson asked about Mrs. Jackson's car keys and began "tussling" him and going through his pockets. An argument over which keys belonged to the deceased then ensued. He said the deceased followed him out of the house asking about her car keys, and he went to his car. He said he had only had a couple of beers to drink. Appellant further testified that he had lived with the deceased about a year, got along well with her and all her children, but they had some occasional arguments.

Appellant said he did not slap or hit the deceased during the argument. He said he had been married to another woman, but left her due to her drinking problem and doesn't know if she is still alive or not. He said his former wife had shot him on two different occasions. He testified that he had been living with another woman before moving in with the deceased and that when the other woman heard that he had been seeing Betty Jackson, she cut him on the arm, back and face with a razor and blinded one eye. He said he then decided to move from Enterprise to Dothan.

Appellant testified his wife had one time stabbed him, "three inches in the head."

The Defense counsel was apparently attempting to establish that the appellant had been beaten up, stabbed and shot by women on various occasions in an attempt to draw an inference of self-defense from such testimony. He then asked the appellant how he felt toward women in general, and the following transpired:

"A. Well, I still have care for them.

"Q. Was it right or wrong for you to kill that woman?

"A. It was wrong.

"Q. It was wrong and you know that?

"A. Yes, sir.

"Q. Did you know that at the time you were shooting her?

"A. Yes, sir, but I was thinking at the time, when I did do it, after I told them I didn't have the keys, why they were still bothering me.

"Q. Were they bothering you about the keys? Were you mad at her?

"A. No, sir, I really wasn't.

"Q. But you shot her?

"A. Yes, sir.

"Q. Did you stop and think about what you were doing?

"A. After it happened, I did.

"Q. Before you shot her?

"A. No, sir, I didn't.

"Q. Could you help yourself?

"A. Yes, sir.

"Q. Could you have stopped if you wanted to?

"A. I suppose so.

"Q. You suppose so. No further questions."

I

■ Appellant contends he was deprived of his constitutional right to a fair trial due to the failure of the trial court to conduct a separate hearing on the issue of his competency to stand trial. In support of this proposition, appellant relies upon Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; Pierce v. State, 52 Ala.App. 422, 293 So.2d 483, cert. denied, Ala., 293 So.2d 489, and Lee v. Alabama, 5 Cir., 406 F.2d 466.

The record in the instant case discloses the indictment to have been filed March 22, 1974. Arraignment was held and Defense counsel appointed on April 8, 1974, at which time trial was set for April 15, 1974, on a plea of not guilty. On April 10, 1974, the Defense filed a Motion for Sanity Hearing pursuant to Title 15, Section 428, Code of Alabama 1940. On April 12, 1974, the Defense filed a motion for production of evidence. On that date, the court issued an order appointing three physicians specializing in mental and nervous diseases to examine the appellant. However, on April 16, 1974, the court set aside its previous order and directed the appellant to be sent to Searcy State Mental Hospital at Mt. Vernon, Alabama, to be examined as to his sanity and directed that a report be returned to the court.

A sanity hearing report was filed on May 10, 1974, by William H. Rudder, M. D., Staff Psychiatrist of Searcy Hospital which in pertinent part is as follows:

"On admission Mr. Cunningham's affect was sad but appropriate, thought content revealed no abberrations, calculations were good for his socio-economic status, abstractions were good, insight and judgment appeared poor.

"Post admission evaluation (including mental and physical examinations, psychological testing, social history study, treatment team interview and psychiatric evaluation) is now complete and a diagnosis of Mile (sic) mental retardation has been made.

"With regard to his competency to stand trial, he is considered competent to stand trial, knows the difference between right and wrong and is able to communicate and cooperate with counsel in aiding in his own defense.

"With regard to his mental condition at the time of the alleged crime, it is my opinion that the mental retardation existed at the time of the alleged crime, but his mental conditiona (sic) otherwise, cannot be ascertained.

"In view of our present findings we are recommending that he be remanded to the Houston County authorities for further consideration of the pending charge."

On May 10, 1974, the court entered an order stating the findings of the Searcy Hospital medical staff and ordered defendant to be returned to Houston County to stand trial. A second arraignment was held on May 13, 1974, and appellant entered pleas of not guilty and not guilty by reason of insanity. On the same date, appellant and his attorney filed "Waiver of Special Venire."

The trial began on May 21, 1974, and ended the next day. The judgment entry shows only a plea of "not guilty" on behalf of the appellant when the indictment was read to the jury. The trial court gave a lengthy oral charge to the jury concerning insanity, and gave defendant's written requested charges No. 6 and No. 7, all relating to insanity at the time of the commission of the offense.

Other than Defense counsel's oral motion to exclude the statement of the appellant, during voir dire examination of Detective W. R. West, no reference is made during the entire trial to the sanity or mental competence of the appellant by either Defense counsel or any witness. No evidence whatsoever was adduced during the trial bearing on the question of competency to stand trial nor upon insanity at the time the offense was committed. At the end of the State's evidence, no motion to exclude the evidence was made and no motion for a new trial was filed.

The facts in this case distinguish it from the case of Pate v. Robinson and Pierce v. State, supra. We do not read *Pate* to mean that upon any mere objection or exception to testimony on grounds that a defendant is insane, a trial court must *sua sponte* hold a separate sanity hearing.

Both the *Pate* and *Pierce* opinions were based upon evidence adduced during trial of a history of mental disorders or a history of irrational conduct on the part of the defendants in those cases, which was sufficient to raise a bona fide doubt as to the defendants' competency to stand trial.

In Pate v. Robinson, supra, the United States Supreme Court based its decision upon the fact that,

"The uncontradicted testimony of four witnesses called by the defense revealed that Robinson had a long history of disturbed behavior."

That Court went on to set out testimony concerning Robinson's history of medical treatment and his erratic conduct going back to his childhood wherein his mother testified a brick dropped from the third floor, hit him in the head when he was six or seven years old, and that he had acted a little peculiar ever since. The witnesses gave several instances of irrational conduct dating back to an Army furlough in 1946 or 1947 up to his confinement in 1952 in the county psychiatric hospital and transfer to the state hospital. Medical records from the state hospital showed symptoms of mental illness, hallucinations and possible schizophrenia.

Witnesses testified concerning Robinson's erratic conduct on later occasions through 1953 when he killed his eighteen-month-old son and attempted suicide himself. After being released from prison, he moved in with a common law wife and later killed her, which brought about his trial and conviction which was the subject of the opinion in Pate v. Robinson.

That opinion points out that in rebuttal of the four Defense witnesses, the State introduced only a stipulation that, if present, Dr. William H. Haines, Director of the Behavior Clinic of the Criminal Court of Cook County would testify that in his opinion Robinson knew the nature of the charges against him and was able to cooperate with counsel when he examined him two or three months before trial. Continuing, the Court set forth another salient fact that assisted them in reaching their conclusion:

"  .  .  . However, since the stipulation did not include a finding of sanity the prosecutor advised the court that 'we should have Dr. Haines' testimony as to

his opinion whether this man is sane or insane. It is possible that the man might be insane and know the nature of the charge or be able to cooperate with his counsel. I think it should be in evidence, your Honor, that Dr. Haines' opinion is that this defendant was sane when he was examined.' However, the court told the prosecutor, 'You have enough in the record now. I don't think you need Dr. Haines.' In his summation defense counsel emphasized 'our defense is clear * * *. It is as to the sanity of the defendant at the time of the crime and also as to the present time.' "

The Court found that throughout the trial, Defense counsel insisted that Robinson's sanity at the time of the trial was very much in issue. That point was likewise argued to the jury. Therefore, all of the above-mentioned testimony, coupled with the prosecutor's suggestion that the trial court should have Dr. Haines' testimony, gave that Court what it considered to be ample grounds for reaching its decision.

The *Pate* case was later applied by this Court in the case of Pierce v. State, supra. After finding, "The rationale of *Pate*, supra, is fundamentally irrational. . . .", Judge Almon stated:

". . . We are, however, bound by the unequivocal compulsions enunciated in *Pate,* supra.

. . . . . .

"We feel that the evidence adduced at the trial is much stronger than that offered in *Pate,* supra. In *Pate* there were only four lay witnesses (three of whom were related to the accused by consanguinity and the other being a close family friend) who testified to matters tending to show competency. In the case sub judice, there was an overwhelming quantity of medical testimony showing a history of mental infirmity. We feel that the evidence below was sufficient to

create a 'bona fide doubt' as to appellant's present competency. Such bona fide doubt existing, the trial court should have suspended the trial proceedings *sua sponte* pending a hearing and determination of the competency issue."

This Court held *Pate* and *Pierce* not to apply, in a fact situation more closely parallel to the instant appeal, in Rich v. State, 51 Ala.App. 556,[1] 287 So.2d 873. There the trial court committed the appellant to Bryce State Mental Hospital for a sanity examination before trial. Rich had a long history of mental disorder, unlike the instant appellant where no such disorder is shown on the record. However, there as in this case, the superintendent of the state hospital sent the trial judge a report that the examination found Rich to be presently sane and competent.

Speaking for this Court in *Rich,* supra, Harris, J., stated:

"On balance we think this case is distinguishable from *Pierce,* supra, and Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. Here we have a letter from the Superintendent of Bryce Hospital certifying that 'after a period of examination, observation, and study, it is the opinion of the hospital staff that the said John Powell Rich is presently sane and competent.' Possessed with such a potent letter from the Superintendent of one of the most prestigious mental institutions in the land, can it be seriously contended that the trial judge was, nevertheless, compelled to the conclusion that he should have entertained a 'bona fide doubt' or reasonable doubt as to the competency of appellant to stand trial? Some courts may so hold but speaking for ourselves, we do not think so. . . ."

In the case of Ray v. State, Ala.App., 299 So.2d 337, this Court held Pate v. Robinson and Pierce v. State, supra, not to apply. In the *Ray* case, the appellant con-

---

1. Although Rich v. State is reported in 51 Ala.App., it was decided subsequent to Pierce v. State, appearing in 52 App.App.

tended he should have been granted a hearing to determine his mental competency to stand trial. The evidence showed three admissions to the Veteran's Hospital during a period from 1962 through 1968 on a diagnosis of duodenal ulcer disease, and passive, aggressive personality. Hospital records were admitted at the trial and two lay witnesses testified as to his mental condition. Appellant had gone to trial on a murder charge and his pleas of not guilty and not guilty by reason of insanity. He was convicted and sentenced to ninety-nine years imprisonment, and later his petition for writ of error coram nobis was denied which brought about this Court's decision on appeal, holding in part:

"We do not think the evidence adduced in the instant proceedings is sufficient to raise 'a bona fide doubt' in the mind of the trial court as to petitioner's competency to stand trial when he was convicted. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815."

While this Court recognizes we are bound by the *Pate* decision, we likewise recognize that it was a departure from settled law at the time it was rendered. While we disagree with the logic of *Pate,* we will nevertheless apply it where the facts presented by an appeal make application necessary to prevent a clear denial of constitutional rights. This Court, however, will not extend nor expand the *Pate* decision to cover fact situations not clearly parallel to those set out in that opinion.

In the instant case, we hold that there was completely insufficient evidence to raise a bona fide doubt as to the appellant's competency to stand trial. The trial court, therefore, did not err in failing to suspend the trial *sua sponte* pending a hearing and determination of appellant's competency to stand trial.

II

As to the question of appellant's insanity at the time of the commission of the offense or at the time of his statement to Detective West, there is a total absence of evidence to sustain the special plea of insanity and the question was properly left to the jury. See: Parsons v. State, 81 Ala. 577, 2 So. 854; McHugh v. State, Ala.App., 301 So.2d 238; Breen v. State, Ala.App., 302 So.2d 562, and Davis v. State, Ala.App., 302 So.2d 571.

We have searched the record for error and find none.

Affirmed.

All the Judges concur.