338 So.2d 478 (1976)
John BILLUPS, Jr.
v.
STATE.
3 Div. 570.
Court of Criminal Appeals of Alabama.
October 12, 1976.
Robert B. Crumpton, Jr., Montgomery, for appellant.
William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., for the State.
L. S. MOORE, Supernumerary Circuit Judge.
The appellant was indicted, tried, convicted and adjudged guilty of assault with the intent to murder. He was sentenced to imprisonment in the penitentiary of the State of Alabama for a term of twenty years. Hence, this appeal.
*479 The appellant contends on this appeal that the trial court should have suspended the trial of the appellant and cause a separate jury to inquire into the fact of his present sanity. That contention is based upon (1) the requirements or provisions of § 426, T. 15, Code of Alabama, Recompiled 1958 and (2) the evidence.
Said § 426, is here set forth:
"If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. If the jury shall find the accused sane at the time of their verdict, they shall make no other inquiry, and the trial in chief shall proceed. If they find that he is insane at that time, the court shall make an order committing him to the Alabama state hospitals, where he must remain until he is restored to his right mind. When the superintendent of the hospitals shall be of opinion that such person is so restored he shall forthwith, in writing, inform the judge and sheriff of such court of the fact, whereupon such person must be remanded to prison on an order of such judge, and the criminal proceedings resumed. In no event shall such person be set at large so long as such prosecution is pending, or so long as he continues to be insane."
Under the provisions of that section of the Code, the following requirements must be met before the trial court is required to hold such hearing namely:
(1) The appellant must have been indicted for a felony and confined under said indictment.
(2) The trial court had reasonable grounds to doubt his sanity.
The record on this appeal discloses that at the time of the appellant's trial he was being confined under an indictment charging him with assault with the intent to murder which is a felony.
With reference to the second requirement of said Code section, namely, that the trial court had reasonable grounds to doubt his sanity, we here set out the substance of the testimony of the witnesses relating thereto.
Fannie Mae Billups testified that appellant was her son; that on March 15, 1975, he was living with her; that on that date he had two bags and he poured it together; they told me it was marihuana. She must have been referring to her son, the appellant and Clemmy Moultry when she said "They told me it was marihuana" because they were the only adults in the house other than the witness at that time. She further testified that when she saw the bags she called the police because she felt he was hooked on the "stuff" and she wanted him "off;" that she called for help for him; that after she called the police the appellant and Clemmy Moultry got into an argument and appellant told Moultry "that he would stick him in the head"; that appellant had a butcher knife in his hand at that time; that she had called the police about the appellant five or six times before that. This witness related the fact that the appellant had been in trouble many times and that she had requested the courts handling those cases or some of them to have him sent to mental health for treatment. That was brought out in answer to question propounded by counsel for the appellant.
She further testified that she asked for this treatment because appellant did not seem to be right; that appellant had some fancy clothes at one time and gave them to the Salvation Army; that afterwards he wore ladies house shoes and an old pair of pants; that he took five or six baths a day; that he would put face-cream on his whole body; that he sometimes acted strange. This witness then testified that the officers came to the house and the first officer to arrive attempted to arrest the appellant; that the officer and the appellant began to struggle when the officer tried to put handcuffs on appellant; that during the struggle they fell on the stove and finally out the *480 door and down the steps; that she went into another room and heard some shots; that she went to the door and saw the appellant with a gun in his hands and one officer lying under a fig tree and another officer sitting in the yard holding his arm.
A statement made by the defendant to the officers in the nature of a confession was introduced in evidence. This statement is clear, concise, and demonstrates a clear detailed memory of events. The statement is here set out for the purpose of showing his mental stability.
 "STATE'S EXHIBIT # 2
 "Montgomery Police Dept.
 "Detective Division
 "March 15, 1975 5:40 P.M.
"STATEMENT OF: JOHN BILLOPS JR
[sic]
 "426 Clisby Park
 "Mongomery, Ala.
"Concerning the shooting of two Montgomery, Ala Police Officers this date in the rear yard of 426 Clisby Park, Montgomery, Ala.
"This afternoon between 4:00 and 4:30 PM, I was at my mothers house at 426 Clisby Park, I was cooking me something to eat and one of the borders [sic] that rents a room from my mother, I think his name is Clement Moultrie came into the kitchen where I was and I started arguing with him, during the argument I think my mother called the police because we was about to fight. During this time Moultrie and I quit arguing and I believe he went to the front room. I was still in the kitchen and a plain clothes policeman came in there, my mother was with the police officer and she was telling him what had happened between Moultrie and myself, she also told him that I had some marijuana on me, I asked the officer if he had a search warrant or a warrant for me and he told me or might have told me that I was under arrest. He got his handcuffs out, I was sitting in a chair, he took me by the arm and told me that I was under arrest, we started scuffling and I saw his pistol hanging from a shoulder holster, I grabbed for it, we both had our hands on the holster and pistol, we were still in the kitchen, scuffling for the gun and I saw another policeman come in the door. When he came in the door, the plain clothed officer and I had scuffled out the back door and fell into the back yard. We were on the ground tusselling still fighting over the pistol, we both had gotten back on our feet or knees and one of the uniform officers put his night stick over my shoulders and pulled back when he did I broke loose from him and I came up with the gun, I fired at one of the uniformed officers, I believe I fired twice, the policeman was laying on the ground when I fired at him. I think I hit him twice, he hollared [sic] but I don't know what he said. After I hit that officer I fired at another uniform officer, he was standing up. I shot at him either once or twice. I don't know if I hit him or not. After I fired the last one or two shots at the officer standing up I started running. I passed by the plain clothes officer and pointed the gun at his head and pulled the trigger. The gun did not fire. I don't know if it was empty or not. I kept running and ran to a house on Nichols Street and went to hide. No one was at home, I was in there about twenty minutes and the officers came and arrested me.
"Q. Have you been drinking any alcoholic beverages today?
"A. No.
"Q. Have you used any drugs this day?
"A. No sir.
"Q. Did you have marijuana on you when your mother told the officer you did?
"A. Yes sir.
"Q. Why did you resist arrest?
"A. He pulled me up out of the chair by the arm.
"Q. Was the officer by his [sic] self and you thought you could run?
"A. I would have if I had of had the chance.
"Q. Have you run from the police before?
"A. I have.

*481 "Q. Why did you run?
"A. I didn't want to go to jail.
"Q. Why did you shoot the officer on the ground?
"A. I was afraid I might get shot.
"Q. Did any of the officers have their guns out?
"A. I didn't see any.
"Q. When you ran by the plain clothes officer why did you put the gun to his head and pull the trigger?
"A. Because I wanted to get away.
"Q. How far was [sic] you from the plain clothes officer when you had the gun at his head and pulled the trigger?
"A. About three feet.
"Q. After you got the officers [sic] gun what did you see the officers have in their hands?
"A. Night sticks?
"Q. Was [sic] you ever hit with a stick?
"A. No, he put the stick over my shoulder to pin my arms that's when I got the gun.
"Q. Is there any thing else you can add to this statement, [sic]
"/s/ JOHN BILLUPS, JR.
 /s/ R. E. LYNCH
 /s/ T. J. McLAIN."
The writer of this opinion has read and considered the entire record in considering the appellant's contention that a proceeding should have been conducted by the trial court under said § 426. The defendant testified on two separate occasions during the trial and his testimony details events precisely and reveals a clear understanding of material events. There is nothing in his testimony or in his ability to understand the questions addressed to him or in his answers thereto that would cause the trial judge to have reasonable grounds to doubt that he was sane.
The defendant and his attorney knew he had been to a mental health clinic but did not offer any witnesses who examined or treated him, notwithstanding he had entered a plea of not guilty by reason of insanity. The trial judge could well presume that such a witness did not exist who could have been helpful to the defendant in that respect.
In Pearson v. State, 41 Ala.App. 366, 133 So.2d 60, the court stated:
"[1] It is well settled that the provisions of Title 15, Chapter 21, Article 2, Code of Alabama 1940, pertaining to inquiry into a defendant's sanity at the time of trial, are not mandatory, but such matters are addressed to the sound discretion of the trial judge and his action is not revisable on appeal except for an abuse of discretion. Reedy v. State, 246 Ala. 363, 20 So.2d 528; Ex parte Bush, 247 Ala. 351, 24 So.2d 353; Burns v. State, 246 Ala. 135, 19 So.2d 450."
In Kelley v. State, 45 Ala.App. 144, 227 So.2d 141, the law is stated in this manner:
"[1] He insists the trial judge should have permitted him to have been examined by a commission on lunacy in accordance with Tit. 15, § 425, Code of Alabama 1940. This contention is untenable for two reasons: (1) he was not charged with a capital offense, and (2) § 425, supra, is discretionary and not mandatory. Ex parte State ex rel. Paterson, 268 Ala. 524, 108 So.2d 448; Aaron v. State, 271 Ala. 70, 122 So.2d 360; Eaton v. State, 280 Ala. 659, 197 So.2d 761.
"[2] Although his petition only mentions § 425, the record indicates that the attorney representing appellant at the hearing based his argument on the failure of the court to comply with § 426, Tit. 15, Code of Alabama, 1940, instead of § 425. § 426 is also within the sound discretion of the trial judge and his action is not reviewable on appeal except for abuse of discretion. Pearson v. State, 41 Ala.App. 366, 133 So.2d 60."
There was no abuse of discretion on the part of the trial judge, therefore no reviewable error.
The appellant is presently serving a sentence imposed on him for the murder of an officer on the occasion when he is alleged to have committed the offense charged in the indictment in the instant case. The appellant contends that for that *482 reason the sentence imposed on him in this case should be set aside. He cites in brief, Yelton v. State, 56 Ala.App. 272, 321 So.2d 234.
The Yelton case, supra, is a case involving inseparable acts. The breaking and entry and the murder was done with the same intent. The act of the murder of one officer and the assault with intent to murder another on the occasion in question in the instant case were two separate and distinct acts, clearly separable. He killed one officer by shooting him with a gun. He then performed another act by shooting the officer named in the indictment in the case before us. The acts were separate in point of time and intent.
The trial court did not err in that respect.
The foregoing opinion was prepared by Honorable L. S. MOORE, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
The judgment below is hereby
AFFIRMED.
CATES, P.J., and HARRIS and DeCARLO, JJ., concur.
TYSON and BOOKOUT, JJ., concur specially.
BOOKOUT, Judge (concurring specially):
We should not go on record as holding that the trial judge has complete discretion as to whether he should suspend a trial and cause a separate jury to inquire into the fact of a defendant's sanity. The cases cited in the opinion would indicate that such is the case, subject only to review for abuse of discretion.
In reaching a decision in this case, two cases not mentioned in the majority opinion should be considered: Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; and Pierce v. State, 52 Ala.App. 422, 293 So.2d 483, cert, quashed 292 Ala. 745, 293 So.2d 489.
Pursuant to both Pate and Pierce, the trial judge is under an affirmative duty to stop the trial and sua sponte hold a separate sanity hearing, where evidence is adduced during the trial of a history of mental disorders or of irrational conduct on the part of the defendant which is sufficient to raise a bona fide doubt as to the defendant's competency to stand trial.
In both Pate and Pierce, supra, there was substantial evidence of mental disorders necessitating such a holding. In the instant case, the evidence of the appellant's peculiar conduct appears to be insufficient to bring it within the mandate of Pate and Pierce. For a more detailed discussion of those two cases, see Cunningham v. State, 54 Ala.App. 514, 310 So.2d 235 (1975).
Although neither Pate nor Pierce, supra, were considered in the instant opinion, the result would have been the same had those opinions been considered, and I therefore concur in the result.
TYSON, J., joins in the above.