TYSON, Judge.
The appellant in this case was indicted for the first degree murder of her infant daughter “by holding her face down on a mattress until she suffocated.” The jury found appellant guilty of murder in the second degree and fixed punishment at twenty years imprisonment. The trial judge set sentence accordingly.
On pretrial motion of appellant’s counsel, the court below ordered on February 8, 1978, that appellant be delivered to Bryce Hospital for observation and evaluation pursuant to § 15-16-20 and § 15-16-21, Code of Ala.1975. Subsequently, the superintendent of Bryce Hospital certified that appellant had been “restored to her right mind” as specified in the above mentioned statute. (R. p. 115) On April 12, 1978, appellant was transferred to the Montgomery County Jail to stand trial for the charges against her. (R. p. 116)
Dr. Richard Roper, State Toxicologist, testified that he performed an autopsy on the infant portrayed in the photograph introduced as State’s Exhibit No. 1. Dr. Roper was shown to possess the requisite qualifications and experience to express his opinion as to factors capable of causing human death. Dr. Roper stated that various observed characteristics of the organs of the infant’s body indicated that death was the result of a respiratory insufficiency which lacked any natural cause such as disease or other pathology. More specifically, Dr. Roper stated that the respiratory insufficiency occurred as a result of asphyxia due to suffocation. (R. p. 8)
George Leak, a Montgomery police detective, testified that on the morning of December 11, 1977, he went to an apartment at 425F Caroline Court in Montgomery County, Alabama. In one of the bedrooms, Detective Leak found the dead infant. Outside the presence of the jury, Detective Leak repeated the warning he gave to the appellant as to her rights under the Fifth and Fourteenth Amendments to the United States Constitution. The appellant requested permission to call a witness to testify as to appellant’s mental capacity to waive her constitutional rights. The trial court denied the request ruling that such testimony could be presented during the case for the defense.
When the jury returned, Detective Leak was allowed to testify that the appellant had told him how the infant’s death had occurred. Detective Leak assured the court that no threats, intimidation, promises, inducements or other coercive influences of any nature had been offered or made in order to induce the appellant to talk to him. Officer Leak stated:
“A.. She said the baby had been crying during the night and about four thirty A.M. she had got up with the baby and fed it. And after this the baby still would not quit crying so she turned it face down to the mattress and held its face into the mattress until it did quit crying. And then she woke up the next morning and the baby was still laying face down.”
It was shown by Detective Leak’s testimony that later the same day at approximately 9:45 a. m., the appellant signed a waiver form and a written statement which were introduced and admitted into evidence over objection of defense counsel. On cross-examination it was noted that the appellant was in custody at the time the statement was taken.
Montgomery Police Detective Leo Blankenship testified that the appellant executed a second waiver of rights form at 4:20 p. m. on December 12, 1977. Shortly thereafter, the appellant gave another statement to the police which was reduced to writing and signed by the appellant. The proper predicate having been laid, the trial judge admitted the second waiver and written statement into evidence over defense counsel’s objection. At the close of Detective Blankenship’s testimony, the State rested its case.
*371 Outside the presence of the jury, the defense moved to exclude the State’s case. The trial judge denied the motion whereupon the defense presented its case to the jury.
The sole witness presented by the defense was Leonard Daley. Although he was not a licensed psychologist, Mr. Daley testified that he had earned a Master’s Degree in Psychology and had been involved in psychological counseling for ten years. Mr. Daley had listened to a taped interview between the appellant and her attorney in jail and had interviewed the appellant for about one hour in jail. Based on this examination of the appellant, Mr. Daley was able to evaluate the appellant’s psychological condition. Mr. Daley concluded that the appellant appeared to be displaying some symptoms of an incipient schizophrenic episode. Mr. Daley explained that this meant that, on certain occasions, the appellant would be incapable of accurately perceiving her external reality. These occasions could be the result of hysteria or stress. Mr. Daley stated that the appellant would probably behave aggressively or violently during the occurrence of a schizophrenic episode. While behaving in this manner, the appellant would have no consciousness of what is right and what is wrong.
Following Mr. Daley’s testimony, the defense rested. Subsequently, the trial judge delivered the oral charge to the jury together with certain requested written charges. The trial judge refused to give the affirmative charge to the jury.
I
The appellant’s counsel contends that the appellant was incompetent at the time of trial and, consequently, should not have been put to trial under the rationale of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The record in this case does not support this contention. The appellant’s medical and psychiatric records which were compiled during her three months at Bryce Hospital were carefully reviewed and evaluated prior to the superintendent’s letter to the circuit judge dated April 3, 1978. (R. p. 115) In that letter, the superintendent stated that the appellant had been “restored to her right mind” in accordance with § 15-16-20, Code of Ala.1975. In a subsequent letter to the circuit judge dated June 8, 1978, the superintendent of Bryce Hospital stated: “Upon discharge from his hospital, she [appellant] was competent to stand trial.” (R. p. 123)
Therefore, it is our opinion that the circuit judge on April 12, 1978, properly ordered the appellant transferred to the Montgomery County Jail to stand trial. (R. p. 116) Furthermore, we find no error in the trial judge’s decision not to hold a formal hearing to determine the competency of the appellant to stand trial. In Tillis v. State, 292 Ala. 521, 296 So.2d 892 (1974), the Alabama Supreme Court, per Mr. Justice Faulkner, collected the cases dealing with the issue here presented. The Court stated:
“The defendant contends that at no time was there a valid determination of his competency to stand trial and assist in his own defense. This raises several issues of paramount importance. In the case of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court of the United States enunciated the rule that if a sufficient doubt as to the present competency of the accused is made known to the trial court, then the court must hold a hearing on the issue of competency to stand trial. The defendant is constitutionally entitled to such a hearing. The law in this State until very recently has been that it is in the complete discretion of the trial judge to implement any sanity investigation, whether under § 425, 426, or 428 of Title 15, Code of Alabama, 1940, Recompiled 1958. Numerous cases have in the past supported this proposition. See Seibold v. State, 287 Ala. 549, 253 So.2d 302 (1970); Ex Parte Bush, 247 Ala. 351, 24 So.2d 353 (1945); Burns v. State, 246 Ala. 135, 19 So.2d 450 (1944); Whitfield v. State, 236 Ala. 312, 182 So. 42 (1938); Rohn v. State, 186 Ala. 5, 65 So. 42 (1914); Granberry v. State, 184 Ala. 5, 63 So. 975 (1913).
*372 “However, in Pierce v. State, 292 Ala. 745, 293 So.2d 489 (1974) (writ quashed), the ‘old’ approach was abandoned in favor of one more in keeping with the due process requirements of Pate. Chief Justice Heflin wrote in Pierce:
‘The law is now settled that if sufficient doubt of the defendant’s present mental competency is raised before or during trial, then it is mandatory that there be a judicial hearing to determine his mental competency to stand trial, and that the refusal of the trial court to grant such a hearing is reviewable.’
“To the extent the above cited cases conflicted with the holding, they were overruled.
“In light of the above, we still do not feel the trial court was in error. The mere fact that the defendant asked for a sanity investigation under § 428, Title 15, Code of Alabama 1940 certainly did not constitute a ‘sufficient doubt’ or ‘reasonable cause.’ . . . ”
Under the evidence presented in the instant case, we find a similar lack of “sufficient doubt” or “reasonable cause” to doubt appellant’s sanity at the time of trial. Hence, a hearing under either § 15-16-20 or § 15-16-21, Code of Ala.1975, was unnecessary.
II
Appellant contends that her confessions were not shown to have been voluntarily and intelligently given. In support of this argument, appellant relies strongly upon the results of intelligence tests administered at Bryce Hospital. These results placed appellant in a category denominated “borderline mental retardate.”
In Jones v. State, Ala.Cr.App., 362 So.2d 1303 (1978), this court quoted Mitchell v. State, Ala.Cr.App., 338 So.2d 524 (1976):
“ ‘In order to hold that the appellant was incapable of voluntarily confessing, we would have to take judicial notice of a fact not in evidence, i. e., that a person with an I.Q. of 65 does not have the mental capacity to voluntarily confess. This we cannot do. . . .’”
In the instant case, the evidence showed that the appellant had a full-scale I.Q. of 76. (R. p. 51) Moreover, it was shown that the appellant completed the eleventh grade in school. Although Mr. Daley testified that it was his opinion that under stress the appellant could not function rationally, the opinions of the experts at Bryce Hospital were to the effect that the appellant was competent to give a voluntary and intelligent statement to the police. Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967); Twymon v. State, Ala.Cr.App., 358 So.2d 1072 (1978).
Furthermore, it was pointed out on cross-examination that Mr. Daley’s total contact with the appellant consisted of a one hour interview in jail and listening to a ten minute tape of an interview between the appellant and her attorney. In such a situation, the conflict in the evidence presents a question of fact for the jury. Barnes v. State, Ala.Cr.App., 361 So.2d 390 (1978), cert. denied, Ala., 361 So.2d 396 (1978); Higginbotham v. State, Ala.Cr.App., 346 So.2d 525 (1977); Jones v. State, 54 Ala.App. 251, 307 So.2d 59 (1975).
It was shown through testimony of the police that the appellant was duly informed of her Miranda rights. (R. p. 27) Furthermore, we find the record in this case totally void of any indication of improper inducements, threats, abuse or promises made to the appellant in order to get her to make a statement. We, therefore, conclude that the trial court’s admission of the appellant’s statements was proper.
In a related argument, the appellant contends the trial court erred in refusing to allow the testimony of Mr. Daley to be presented at the hearing to determine the voluntariness of the appellant’s statements. In his ruling, the trial judge stated that such testimony would be allowed when the defense presented its case in chief. (R. p. 30) The issue of the appellant’s competence to stand trial having already been decided prior to trial, Mr. Daley’s contradictory testimony was clearly not probative of the *373 issue of whether vel non the appellants confession was voluntary. Hence, the exclusion of Mr. Daley’s testimony from the voluntariness hearing was proper.
Ill
The appellant contends that she was denied her constitutional right to confront witnesses against her when the trial judge ruled that the proper procedure to obtain the testimony of the physician in charge of the state mental hospital is by way of deposition under § 12-21-260, Code of Ala.1975. This court has addressed this issue, and it is settled that the statutory procedure referred to hereinabove comports with constitutional requirements. Sheppard v. State, 49 Ala.App. 398, 272 So.2d 605 (1973); Rich v. State, 51 Ala.App. 556, 287 So.2d 873 (1973); Pierce v. State, 52 Ala.App. 422, 293 So.2d 483, cert. quashed, 292 Ala. 745, 293 So.2d 489 (1973).
This court is aware of no controlling authority requiring the appointment of a court reporter to depose a witness when the accused is indigent. See Clark v. State, 294 Ala. 493, 318 So.2d 822 (1975).
After careful examination of the record in this case, we find same to be free of error. The judgment of conviction is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.