The defendant was indicted and convicted for the murder of Willie Lockhart. Alabama Code 1975, Section 13A-6-2 (Amended 1977). Sentence was life imprisonment. *Page 160 
 I
Initially the defendant contends that the trial court erred in refusing to grant his motion for an additional investigation into his sanity.
The trial court granted the defendant's pretrial "motion for the investigation of the sanity of defendant at both the time of the alleged offense and presently." Pursuant to this order the defendant was examined by Robert Rose, a psychologist with the East Alabama Comprehensive Mental Health Clinic. The findings of Dr. Rose were received by the court and by defense counsel the day before the trial date. When the defendant's case was called for trial, defense counsel filed the motion for additional investigation of the defendant's sanity.
In denying this second motion, the trial judge made the following remarks:
 "THE COURT: Well, Mr. Jones, (defense counsel), I have gone over this report carefully. I got it yesterday morning. It was delivered to me and I read over it carefully and, of course, I noted in there like the D.A., that the doctor said that it's a possibility that he may be faking.
 "I'm not basing my decision as much on that as that there is nowhere in here that he ever states that he finds that he (defendant) is suffering from any disease of the mind. He does state in here that he finds that he is — or has no recollection of the events of the crime that he is charged with.
 "Well, of course, I find that to be true in many cases that we have up here; they have no recollection whatsoever of what occurred. Whether they do or not, I don't know, but he does state in there that he is aware of the fact that he is on trial.
 "Whether or not he can help you much, there again, there are a lot of defendants that I see up here that are unable to help their lawyer much; but I feel that he is aware of the nature of the proceedings. The doctor says that he appears to be ignorant of legal defenses but, of course, a lot of folks are ignorant of legal defenses.
 "I feel that he is competent to stand trial and whether or not he was insane at the time — most of what the doctor is saying here relates to what his condition was at the time of the alleged offense, and whether or not he was insane at the time, and knew what he was doing, that would be a question of fact for the jury to determine.
 "For me to postpone this any longer, I would have to commit him to jail; send him to Bryce's Hospital; and that would result in a postponement of the trial until some time in February; and I feel that he is also entitled to his day in Court, as soon as possible, even though he may be a little mentally deficient.
 "But unfortunately, many of our defendants are mentally deficient. So, at this time, I am going to deny your motion for further examination."
While the report filed by Dr. Rose in compliance with the order of the trial court was neither offered nor admitted into evidence, Dr. Rose testified at trial on behalf of the defendant.
After testing the defendant, Dr. Rose found his intellectual performance "grossly deficient"; "on some items it was even below what you would expect of a two year old." This surprised Dr. Rose who had to entertain the possibility that the defendant was malingering or making himself appear worse than he really was.
 "I had to entertain that possibility because I was faced with a man who had reportedly served in the Armed Forces, held a job for thirty-five years, been married and a parent; he could do all of these things and I had to entertain at least two possibilities to explain that: One was that he, for some reason, was on purpose making mistakes."
The second possibility was that "that type of low-level intellectual performance could represent a generalized brain deterioration." However, Dr. Rose could not positively state that the defendant was malingering: "I could not say that it was malingering. I detected a very inconsistent picture *Page 161 
that to me suggested malingering or brain damage, one of the two."
The defendant had a history of mental disorder in his family and reported to Dr. Rose that he suffered hallucinations, which report Dr. Rose confirmed through the defendant's wife.
Dr. Rose also examined the defendant about his ability to understand his present situation:
 "He didn't have any knowledge that he could express to me about any alternatives such as plea bargaining, understanding what probation meant. And any defense that might be employed such as insanity as a defense. Total lack of understanding of any of these things."
The defendant could not tell Dr. Rose "what the jobs were that various people play in here, the jury, the judge, the prosecutor, his defense attorney." Dr. Rose testified that the defendant "sort of appeared" to have a "very passive agreement out of ignorance" with the way his attorney was handling the case. Although Dr. Rose testified that the defendant did understand that he was charged with murder, he was "ignorant" of the penalty. Some of the defendant's responses to Dr. Rose's questions reflected "a lack of . . . appreciation of his situation." Dr. Rose thought that there was reason to question whether the defendant could comprehend "instructions and advice." The defendant had very little memory of "what had happened, as far as the facts."
Dr. Rose explained that there were three possible explanations for the repeated violent behavior of the defendant: (1) The "unsocialized behavior was not associated with any mental illness or mental condition"; (2) the behavior was related to a mental condition, a psychosis "out of touch with reality"; and (3) the violent episodes were associated with temporal lobe epilepsy. Dr. Rose found "a number of factors that are consistent with "possibility number two: the family incidence of mental illness, the defendant's reported incoherence and mumbling, hallucinations and test results. Dr. Rose stated that the defendant's behavior "would be consistent with some psychotic conditions. I don't know that it's a probability." However, Dr. Rose could not give an opinion as to the cause of the defendant's behavior until the defendant had been examined by psychiatrists or neurologists.
After evaluation of the defendant, Dr. Rose offered three recommendations: (1) That the defendant was seriously enough depressed with a history of one suicide attempt, that his family should be advised that they should "keep a close eye on him because that (suicide) was a very real possibility"; (2) that the defendant be evaluated by psychiatrists or possibly a neurologist, depending on what the psychiatrist said; and (3) the third recommendation was a period of observing his behavior in a controlled hospital setting to either rule in or rule out whether or not some psychotic conditions existed.
Dr. Rose did not determine that the defendant was competent to stand trial:
 "Q. Were you able to determine, Dr. Rose, if in fact Mr. Miles is competent to stand trial?
 "A. I cannot say whether in my opinion he is or he is not. I would want to know the result of the examination on the physical factors, and would like to have more information about his mental status, his thoughts, his behavior in the real world, I guess, outside of my office, at any rate, before I gave an opinion on that. I couldn't say."
Dr. Rose did find the defendant's "performance very consistent with being incompetent."
Near the end of his report, Dr. Rose concluded that, because of the sharp contrast between the defendant's social functions, recent vocational functioning and the gross deficiencies in his intellectual test responses, there was a possibility that this inconsistency is "suggestive of a conscious attempt to appear mentally deficient."
Where the issue of competency to stand trial has been properly raised and when facts are present before the trial judge which create a reasonable and bona *Page 162 
fide doubt as to the mental competency of the accused to stand trial, the trial judge must take steps to assure a reasonable legal determination of the defendant's competency. Atwell v.State, 354 So.2d 30, 35 (Ala.Cr.App. 1977), cert. denied, Exparte Atwell, 354 So.2d 39 (Ala. 1978). The trial judge has an ongoing and continuing responsibility to prevent the trial of an accused unable to assist in his defense. Atwell, 354 So.2d at 37. A second determination of the defendant's competency to stand trial may be required under the same circumstances as an original determination would be required, that is, where there exist facts which raise a reasonable and bona fide doubt of the defendant's competency. Atwell, supra. An additional psychiatric examination of the accused may be warranted where the circumstances surrounding the initial examination justify a further inquiry in order to obtain a more conclusive evaluation of the accused's mental condition. See cases collected at 23 A.L.R.Fed. 738 (1975).
The issue in this case is complicated by the fact that there was never any finding made by the psychologist that the defendant was competent or incompetent to stand trial. In essence, the psychologist only found that further investigation of the defendant's mental condition was warranted.
The discretion exercised by the trial court, in ruling on petitions for mental examinations as to the sanity or competency of the defendant, is subject to review and is not a complete and utter discretion which can never be reversed. Pacev. State, 284 Ala. 585, 587, 226 So.2d 645 (1969). "Where the trial court finds that there are no reasonable grounds to doubt the accused's sanity, the standard of appellate review is whether the trial judge abused his discretion." Beauregard v.State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied,372 So.2d 44 (Ala. 1979).
The determination of the competency of the accused must be that of the trial judge. The trial judge has a duty to "make a specific judicial determination of competence to stand trial, rather than accept psychiatric advice as determinative on this issue." Cooper v. United States, 119 U.S.App.D.C. 142,337 F.2d 538, 539 (1964) (Wright, J., concurring), cert. denied,382 U.S. 1029, 86 S.Ct. 653, 15 L.Ed.2d 542 (1966).
In Pace v. State, 284 Ala. at 587-8, 226 So.2d 645, the Supreme Court of Alabama held:
 "The legislature has not given a right to a defendant to receive a mental examination whenever he requests one. Absent such a right, machinery for screening requests must exist. The legislature has made the trial court this screening agent. We cannot say under our past cases that the appellant's showing was so compelling that the trial court abused its discretion in denying this petition. The trial court held a hearing, listened to the witnesses and made a decision. It might have decided either way on the question of whether the hearing produced any real evidence of legal insanity or legal incompetence. Its decision was not arbitrary or unsupported by reason or fact. We conclude that the trial court did not abuse its discretion."
In Wheeler v. State, 47 Ala. App. 457, 256 So.2d 197 (1971), this Court found that the trial court did not abuse its discretion in refusing to conduct a hearing as to the defendant's sanity. In support of his petition for a hearing, the defendant offered the testimony of a medical doctor who did not attempt to give an opinion as to the sanity or insanity of the defendant or whether he should be given psychiatric examination to determine this question. The denial of a request for a sanity investigation is an abuse of discretion if arbitrary or if unsupported by evidence or human reasoning.Minnifield v. State, 47 Ala. App. 699, 704, 260 So.2d 607
(1972).
It does not matter that we would have acted differently at nisi prius in view of the recommendation of the psychologist.Lokos v. State, 278 Ala. 586, 590, 179 So.2d 714 (1965). The question we must decide is whether the trial judge abused his discretion in not granting the defendant's motion *Page 163 
for further investigation. Under the facts of this case we find no abuse of that discretion. Pace, supra; Thompson v. State,364 So.2d 683 (Ala.Cr.App.), cert. denied, Ex parte Thompson,364 So.2d 687 (Ala. 1978), cert. denied, 441 U.S. 906,99 S.Ct. 1996, 60 L.Ed.2d 375 (1979). A trial court is under no mandatory duty to appoint a lunacy commission or to procure the report of a state hospital, but simply has the right to seek these aids for advisory purposes when the court, in its discretion, thinks that such aids will be helpful. Eaton v.State, 280 Ala. 659, 197 So.2d 761 (1967); Divine v. State,279 Ala. 291, 184 So.2d 628 (1966); Beauregard v. State,372 So.2d 37 (Ala.Cr.App.), cert. denied, Ex parte Beauregard,372 So.2d 44 (Ala. 1979). On a hearing of a motion for a competency investigation, the defendant has the burden of persuasion.Wilson v. State, 371 So.2d 932 (Ala.Cr.App.), affirmed,371 So.2d 943 (Ala. 1978).
Here the allegations that the defendant was unable to effectively assist in the preparation of his own defense were only general, conclusionary and nonspecific. The psychologist's report was not introduced into evidence and is not a part of this record. The trial judge had the distinct advantages of not only carefully studying the entire report but of observing the demeanor and conduct of the defendant. We have not had either of these opportunities. Under these circumstances we find no clear abuse of the discretion of the trial judge.
 II
A review of the totality of the circumstances surrounding the giving of his confession reveals that the defendant made a knowing and intelligent waiver of his rights under Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), despite his mental subnormality and limited education. Hines v.State, 384 So.2d 1171 (Ala.Cr.App.), cert. denied,384 So.2d 1184 (Ala. 1980), and cases cited at 384 So.2d 1181.
Nick Abbett, at that time captain of the Investigative Division of the Opelika Police Department, advised the defendant of his Miranda rights. Aware of the defendant's lack of education, Captain Abbett asked the defendant what each right meant to him as he explained each right to the defendant.
 "However, because of his lack of education, I asked him what each one of those rights meant to him, as I explained them to him. I had him explain them back to me, what it meant to him.
 "And he clearly repeated back to me what they meant to him, and it was consistent with what's on the (waiver) form."
The record in this instance expressly and specifically establishes that the constitutional rights were simply and clearly explained to the defendant. Hines, 384 So.2d at 1181. We find no error in the admission of the defendant's confession into evidence.
 III
We have carefully examined the written charges requested by the defendant and find that each was properly refused.
After searching the record we have found no error prejudicial to the substantial rights of the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.