On October 10, 1981, Hollis Eugene Gothard, the appellant, was "totally drunk" and driving his northbound automobile in the southbound lane of U.S. Highway 31 in Jefferson County. A two and one-half mile path of near tragedies climaxed in a horrible disaster when Gothard collided head-on into a car in which Richard Reeves, his twenty-three-year old wife and their eleven-month old infant were riding. Mrs. Reeves was killed, with almost every bone in her body being broken. Gothard was indicted and convicted for her murder. Alabama Code Section13A-6-2 (a)(2). Sentence was ten years' imprisonment. Two issues are argued on appeal.
 I
Gothard contends that the State failed to establish a proper chain of custody of the blood sample taken from him after the wreck.
It is undisputed that on October 10, 1981, a sample of blood was withdrawn from Gothard in the presence of State Trooper Robert Bell. A urine sample was also taken. The samples were placed in vials and given to Bell who, within an hour, personally delivered the vials to Corporal T.M. Rushing. Rushing testified that he delivered the vials to Forensic Toxicologist Chip Walls "right about noon" on October the 12th.
Walls testified that he received the vial from Rushing at 10:25 A.M. on October the 13th. Walls also stated that Rushing would be incorrect if he testified that the vials were delivered on the 12th "unless there is a mistake on the receipt form."
Gothard contends that "because the State's witnesses could not agree on when these vials were transferred from one officer to another, that there is sufficient doubt and sufficient question that the chain of custody had been broken."
Despite the difference in dates, the record clearly shows that the State accounted for all the successive steps in the handling of the blood and urine samples from the time they were taken until the time they were analyzed. The "chain of custody" involves "the necessity of proving where and by whom the specimen was kept and through whose hands it passed." J. Richardson, Modern Scientific Evidence Section 13.14a (2nd ed. 1974). "The chain of custody rule provides that the party *Page 891 
seeking to introduce into evidence the results of an expert analysis has the burden of proving that the specimen or object analyzed was, in fact, derived or taken from the particular person or place alleged." A. Moenssens F. Inbau, ScientificEvidence In Criminal Cases Section 1.18 at 56-57 (2nd ed. 1978) (containing an excellent treatment of this subject in general and on blood samples in particular at Section 6.35).
 "To establish a sufficient predicate for admission into evidence it must be shown that there was no break in the chain of custody of the projectile. Identification and continuity of possession must be sufficiently established to afford ample assurance of the authenticity of the item. Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960); Dennison v. State, 259 Ala. 424, 66 So.2d 552 (1953); Powell v. State, 51 Ala. App. 398, 286 So.2d 73 (1973); Jemison v. State, 40 Ala. App. 581, 120 So.2d 748 (1960)." Ex parte Yarber, 375 So.2d 1231, 1234 (Ala. 1979).
Whetstone v. State, 407 So.2d 854, 857-60 (Ala.Cr.App. 1981), cited by Gothard as controlling, involved a "missing link" in the chain of custody — someone who had the evidence failed to testify when and to whom he delivered that evidence. See alsoMauldin v. State, 402 So.2d 1106, 1110 (Ala.Cr.App. 1981).
We are convinced that the chain of custody was sufficiently established by the evidence. See Slaughter v. State,411 So.2d 819, 822-23 (Ala.Cr.App. 1981); Williams v. State,375 So.2d 1257, 1266-67 (Ala.Cr.App.), cert. denied, Ex parte Williams,375 So.2d 1271 (Ala. 1979); Thomas v. State, 356 So.2d 210
(Ala.Cr.App. 1977), cert. quashed, 356 So.2d 214 (Ala. 1978). The evidence affords ample assurance of the integrity and authenticity of the samples and establishes the "reasonable certainty that there has been no substitution, alteration, or tampering with the specimen." Scientific Evidence In CriminalCases at 58. See also E. Imwinkelried, The Methods Of AttackingScientific Evidence Section 3-2 (A)-(D) (1982).
 II
The second and the major issue argued on appeal concerns the failure of the trial judge to initiate inquiry into Gothard's mental competence to stand trial.
With commendable candor, retained defense counsel (both of whom were appointed to represent Gothard on appeal) admit that the issue of Gothard's competency was not raised at any time in the circuit court. Counsel also admit that they realized that Gothard "could not recall events surrounding the accident", but recognized that the "(i)nability to recall the events constituting the crime charged because of amnesia does not constitute mental incapacity or incompetency to stand trial."Beauregard v. State, 372 So.2d 37, 43 (Ala.Crim.App.), cert. denied, Ex parte Beauregard, 372 So.2d 44 (Ala. 1979). (Appellant's Brief, p. 12). Counsel state that "(i)t was not until the conclusion of the trial that Appellant's attorneys became aware of the retardation or mental deficiencies of the appellant" when the trial judge stated that Gothard was "obviously retarded". (Appellant's Brief, pp. 12-13).
Counsel place a great deal of significance upon the judge's comment. His comment was made before he imposed sentence. In order to place the remark in its proper context, we set out, in its entirety, the statement the trial judge made before sentencing Gothard.
 "THE COURT: . . . Do you have anything to say why sentence should not be pronounced against you?
"THE DEFENDANT: No, sir.
"THE COURT: All right, you say no.
 "Just want to make a statement about this. And not just for your benefit but for everybody's, one purpose and important purpose of punishment is to deter others from committing similar crimes. That which I say, my bailiff has a copy if anyone wants it they can have it, this case is a most tragic example that this Court has ever tried. The facts are rarely equaled: A totally drunk driver, defendant, going north on a south bound *Page 892 
expressway with ten to fifteen witnesses testifying to the defendant's car running people off the road, a car turned over, car side-swiped and two-and-a-half miles of this climaxing in a horrible disaster when the defendant ran head-on into a car occupied by a father, mother and eleven month old child on the way to a wedding.
 Result: The mother died with almost every bone in her body broken, the father hovered between life and death and still suffers from injuries. The defendant driver, regularly employed before this tragedy has been unable to work since this tragedy, he is, according to the testimony now blind in one eye and only partial sight in the other, obviously retarded
by injuries to the head, scars over the face and crushed legs that impede his walking.
 "This is the worst, but certainly not the first, case of this type this Judge has tried. It is the first for this Court, and perhaps this county, that a jury has found the defendant guilty of murder.
 "Let no one who mixes drinking think it cannot happen to them, but a jury of this county has by its verdict sent notice to one who commits vehicular homicide while drunk can be guilty of murder. This Court and anyone seeing the defendant cannot help but feel compassion. Arguments for leniency by reason of his present pathetic condition and that he cannot last long in a penitentiary because of his obvious infirmities are moving, but the other side of the coin, without reputation (sic) (repudiation) is overwhelming. Added to it are six or seven arrests for DWI before this disastrous occurrence, and this Court needs no reminder that the defendant caused the terrible results both to others and to himself.
 No probation will be granted and no split sentence will be granted, it is the judgment and sentence of this Court that this defendant shall be imprisoned in the penitentiary for ten years."
(Emphasis added).
The record contains no other significant indication of Gothard's mental capacity. There was no plea of not guilty by reason of insanity or mental disease or defect. Gothard testified in his own defense at trial. When asked about the injuries he sustained in the wreck, he responded: "All I know is when I came out of the hospital I had chest, face, hip, and leg injuries — * * * It crushed my face in." Although Gothard testified that he could not recall "anything that happened on October the 10th, 1981", he was not questioned about his present mental condition and gave no response which would indicate the state of his competency. From the transcript of his testimony, it appears that Gothard was able to comprehend and rationally respond to the questioning by the attorneys.
Gothard's wife also testified at trial. She stated that since the wreck Gothard could not make "decisions in a reasonable manner" as well as he could before the wreck and that he "is much slower in his thinking." She also testified that he had deteriorated mentally.
All the "evidence" that Gothard was incompetent to stand trial, other than the judge's remark and what can be gleaned from the testimony of Gothard and his wife, is outside the record and has been placed before this Court in the form of an appendix to Gothard's brief on appeal. The appendix contains a "psychological assessment" of Gothard performed by the Social Security Administration in order to determine whether he could manage any disability benefits which might be awarded.
The "impressions and recommendations" of the clinical neuropsychologist who tested Gothard were:
 "1. The results from this assessment indicate that Mr. Gothard has sustained considerable neuropsychological impairment as a result of a closed head injury sustained in October of 1981. Intellectually, his current overall level of functioning is within the mild range of mental retardation. *Page 893 
 "2. Considering number 1, plus the fact that his wife has been managing their finances since the accident, it is not likely that he could independently manage benefits if awarded.
 "3. Therefore, a guardian (i.e., wife) should be appointed to help him manage benefits if awarded."
Gothard's full scale I.Q. was reported as "65 (mild mental retardation)."
The substance of the argument of Gothard's attorneys is that although they had no cause to question Gothard's competency to stand trial until he was diagnosed by the Social Security Administration, the trial judge, by his observation that Gothard was "obviously retarded", had sufficient cause to suspect his competency. The report and findings of the Social Security Administration are not properly before this Court and should not and cannot even be considered. Tyus v. State,347 So.2d 1377 (Ala.Crim.App.), cert. denied, 347 So.2d 1384 (Ala. 1977). The report itself is dated August 4, 1983 — more than four months after Gothard had been sentenced and given notice of appeal on March 31, 1983. There was no motion for a new trial.
The key question in this case is whether there were facts present before the trial judge which would create a sufficient or reasonable and bona fide doubt of Gothard's mental capacity to stand trial. "(W)hen facts are present before the trial judge which create a reasonable and bona fide doubt as to the mental competency of the accused to stand trial, there is no question but that the trial judge must take steps to assure a reasonable legal determination of such questions." Atwell v.State, 354 So.2d 30, 35 (Ala.Crim.App. 1977), cert. denied, Exparte Atwell, 354 So.2d 39 (Ala. 1978). Even where the issue of competency to stand trial has not been raised by defense counsel, "(t)he trial judge has an ongoing and continuing responsibility to prevent the trial of an accused unable to assist in his defense." Miles v. State, 408 So.2d 158, 162
(Ala.Crim.App. 1981), cert. denied, Ex parte Miles,408 So.2d 163 (Ala. 1982). Most recently, our Supreme Court stated:
 "It is equally clear that in view of Pate, supra, (Pate v. Robinson, 383 U.S. 375 [86 S.Ct. 836, 15 L.Ed.2d 815] (1966)), Pierce v. State, 52 Ala. App. 422, 293 So.2d 483 (1973), cert. quashed, 292 Ala. 745, 293 So.2d 489; and Edgerson v. State, 53 Ala. App. 581, 302 So.2d 556 (1974), a trial court has an independent duty to inquire into an accused's state of mind when there are reasonable grounds to doubt the accused's competency to stand trial. The standard upon which this determination is to be made is set out in Edgerson, supra."
Ex parte LaFlore, 445 So.2d 932 (Ala. 1983).
The standard set out in Edgerson, 53 Ala. App. at 588,302 So.2d 556, is that "a criminal defendant must have an understanding of the proceedings against him and an ability to communicate with his attorney in preparing his defense before he may be proceeded against criminally." See also Dusky v.United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824
(1960).
Although no general standard exists to determine the nature or amount of evidence necessary to require a competency hearing, Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896,904, 43 L.Ed.2d 103 (1975), some further inquiry must be conducted when "sufficient doubt" exists about a defendant's competence to stand trial. Drope, 420 U.S. at 180,95 S.Ct. at 908; Atwell, 354 So.2d at 35-36.
Even if we consider the report and findings of the Social Security Administration, which were not and could not have been presented to the trial judge, we find no reasonable ground to doubt Gothard's competency to stand trial. We do not equate the judge's characterization of Gothard as "obviously retarded" as indicating some doubt in the judge's mind as to competency. Considering that comment in the context of the judge's entire statement, we view it as an indication of the trial judge's condemnation of the crime Gothard committed and a comment on the fact that *Page 894 
Gothard "caused the terrible results both to others and to himself." The comment also explains a factor the trial judge considered in sentencing Gothard to ten years' imprisonment — the minimum sentence he could receive upon a conviction for murder. Alabama Code Section 13A-6-2 (c) and Section 13A-5-6
(a)(1) (1975).
Apart from the judge's finding that Gothard was "obviously retarded" and the neuropsychologist's determination that he was functioning within the mild range of mental retardation, there is nothing to suggest that Gothard was incompetent to stand trial. It is not contended that Gothard was actually incompetent to stand trial but only that there should have been a hearing on whether or not he was competent. We have carefully searched the appellant's brief and are unable to find a specific allegation that Gothard lacked the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, or to cooperate and communicate with, and assist his counsel.
"(E)vidence of some degree of mental retardation is not conclusive as to creating a reasonable doubt of mental competency." Robinson v. State, 428 So.2d 167, 170
(Ala.Crim.App. 1982). "The fact that one is mentally retarded does not in and of itself require a finding by the trial court to the effect that it has reasonable doubt as to defendant's competency to stand trial." Persons v. State, 339 So.2d 1092,1094 (Ala.Crim.App. 1976). See also Lewis v. State,380 So.2d 970 (Ala.Crim.App. 1979); Cunningham v. State, 54 Ala. App. 514,310 So.2d 235 (1975). In Buttram v. State, 338 So.2d 1062, 1065
(Ala.Crim.App. 1976), this Court held that the trial court did not err in concluding that an I.Q. test report of 66, which placed the defendant in the "mild mentally retarded category of intellectual functioning", was not in and of itself sufficient to create a reasonable doubt as to defendant's competency to stand trial. See also Miles v. State, 408 So.2d 158
(Ala.Crim.App. 1981), cert. denied, 408 So.2d 163 (Ala. 1982);Posey v. State, 366 So.2d 369 (Ala.Crim.App. 1979). The evidence in this case is not even comparable to the overwhelming quantity of testimony of the accused's incompetency presented in Piercev. State, 52 Ala. App. 422, 293 So.2d 483 (1973), cert. quashed,292 Ala. 745, 293 So.2d 489 (1974).
There was no suggestion by anyone at trial that Gothard was incompetent or suffering from a mental illness or defect. Here, as in Crenshaw v. Wolff, 504 F.2d 377 (8th Cir. 1974), cert. denied, 420 U.S. 966, 95 S.Ct. 1361, 43 L.Ed.2d 445 (1975), the fact that the defendant was diagnosed as being mildly mentally retarded after the trial is not, in and of itself, a rational basis for creating a genuine doubt of his competency to stand trial. An excellent annotation on retardation and competency to stand trial is found at 23 A.L.R. 4th 493 (1983).
Our review of the record convinces us that there were no facts or circumstances present before the trial judge which should have created a sufficient doubt of Gothard's competency to stand trial so as to warrant inquiry into that issue. The record does show that both the trial judge and defense counsel performed their duties in a very responsible and conscientious manner.
In affirming Gothard's conviction, this Court is cognizant that no one has "won" this case for we have all lost. Even in Gothard's punishment little justice will be rendered. A young wife and mother has been senselessly slaughtered by an act which chills the most hardened sensibilities. An infant, who inexplicably escaped death, has been deprived of his mother forever. Gothard himself has been reduced to a pathetic figure for whom no mercy or compassion is evoked. The horror of his actions will haunt him until his dying day. His family too will suffer for his conduct. And still, driving under the influence of alcohol continues to represent one of the major factors contributing to serious traffic accidents across this nation. We have all lost. *Page 895 
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.