# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-01252-SCT

*JOHN PIERRE RICHARDSON, a/k/a "PIERRE"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/96 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHOKWE LUMUMBA |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  PAT S. FLYNN |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/24/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/15/98 |

**BEFORE PRATHER, C.J., BANKS AND WALLER, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This case is before the Court on appeal from the Lincoln County Circuit Court, where appellant was convicted of sexual battery and burglary of an inhabited dwelling. The issues presented on appeal are whether the trial court erred in denying appellant's motion for a continuance and for a competency hearing, whether the expert testimony of appellant's psychologist should have been excluded, and whether confession by appellant was unconstitutionally obtained. We conclude the court committed no error mandating reversal and affirm the appellant's conviction and sentence.

**I.**

¶2. On September 7, 1995, eighty-four year old Eliza Harris was raped by the appellant John Pierre Richardson. Following the assault, Mrs. Harris ran from her house, calling for help. Three people, riding by in a car, heard her cries for help. They stopped and found the elderly lady on the ground. She was crying and screaming "he raped me." As they helped the lady, one of the passers-by, Donald Haney, saw a black male running from inside the house to the back of the house. Haney and his friend, William Smith, chased the black man. They were able to catch the man. He told them he was going for help for Mrs. Harris. Haney told the man to go back to Mrs. Harris' house with them. As

they walked back towards Mrs. Harris' house, Haney left the group to call the police. Soon thereafter, police officers arrived and arrested the man. He was identified as John Pierre Richardson. While in custody, Richardson gave a statement in which he admitted that he raped the elderly lady. This statement was played for the jury, but is not a part of the record. At trial, Mrs. Harris testified that Richardson knocked on her door and asked about her grandson. He then forced his way in and told her that he wanted sex. Mrs. Harris told him that she was eighty-four years old -- too old for sex. Richardson replied, "I likes old womens."

¶3. Tests of evidence gathered at the crime scene -- bed linen and the victim's clothing -- did not contain any sperm belonging to Richardson. There was sperm found on a towel; however, the serologist testified it did not come from Richardson.

¶4. There was a suppression hearing held to determine whether Richardson was capable of giving a valid waiver of rights. Officer Berry testified that Richardson was not threatened, coerced or promised anything while being interrogated. The officer also testified that Richardson seemed to understand his rights. The trial court listened to the taped recording of Richardson's interrogation and concluded that the officer did not offer Richardson help in exchange for his confession. Thus, he ruled that Richardson "made a knowingly, intelligently and freely waiver of his rights to silence and to counsel by reading the warning and signing the waiver of rights forms as recorded on the audio tape."

¶5. At this juncture, the defense sought to introduce the testimony of Dr. Allen Hearne to show that Richardson did not possess the mental ability to give a valid waiver. Because the doctor was not listed as a witness prior to trial, the judge refused to allow him to testify, stating thusly:

> The defendant is evidently, and he or his mother, have evidently decided that they were smarter than learned defense counsel. I am not allowing Dr. Hearne to testify as a sanction against the defendant. For this reason we are not going by the criteria for the *Box* case regarding surprise testimony. . . .

¶6. A jury found Richardson guilty of sexual battery as alleged in count I of the indictment and guilty of count II, burglary of an inhabited dwelling. The judge sentenced him to thirty years on count I -- fifteen years to be served day for day and the remainder to be served on post-release supervision. As to count II, he received fifteen years -- seven to be served day for day and the remainder on post-release supervision. The sentences run consecutively.

¶7. Following his convictions and sentence, Richardson filed a "Motion to Set Aside Sentence and Motion for Judgement of Acquittal Notwithstanding the Verdict of the Jury" and a "Motion for a New Trial." These motions were denied. Aggrieved, he appeals to this Court for relief.

## II.

¶8. In his first assignment of error, Richardson alleges the trial court abused its discretion in denying his motion for continuance. Prior to the commencement of trial, counsel for Richardson moved for a continuance on the ground that he received from Richardson the morning of trial a letter from Dr. Allen K. Hearne, a clinical psychologist, in which the doctor opined that Richardson knew the difference between right and wrong, that he understood the nature of the legal proceedings against him now but possibly not in September 1995 and that he doubted Richardson's ability to assist in his

own defense with a reasonable degree of rational understanding based upon his IQ, reading and spelling scores of .09, .03 and .09 percents.

¶9. The State responded that Richardson had been examined by the state hospital and that doctor's opinion was that to a degree of reasonable medical certainty Richardson was competent at the time he committed the offense and able to assist in his own defense. Also the State pointed out that defense counsel could have filed a motion for psychological examination prior to the date of trial and that the court did, in fact, grant defense's motion for an independent examination. However, he was not examined due to Richardson's failure to pay the required fees.

¶10. The trial court denied the motion for continuance, finding that Richardson's mother was suppose to make arrangements for the payment of the additional examination but had failed to do so. The court further found that Richardson and/or his mother had engaged in some type of strategic delay by only giving Dr. Hearne's report to their attorney the day of trial.

¶11. Presently, Richardson asserts that it was error for the trial court to "summarily dismiss" the competency issue raised by the low IQ. He argues that his competency should have been investigated fully and that the motion was timely and not prejudicial to the State. Additionally, it is maintained that defense counsel was as surprised by the report as the State.

¶12. The State counters that Richardson shopped around for a psychologist and purposefully failed to disclose Dr. Hearne's report until the morning of trial. The State further responds that defense counsel was well aware of the fact that Dr. Hearne had been Richardson's treating physician for years, and yet failed to investigate this relationship or Dr. Hearne's evaluation of Richardson even though his mental status was at issue even after filing a motion for a second mental examination. Thus, the State maintains that the trial court did not abuse its discretion in denying the continuance and that no injustice resulted from that denial.

¶13. Whether a continuance should be granted or denied is within the sound discretion of the trial court. *Johnson v. State*, 631 So. 2d 185, 189 (Miss. 1994); *Wallace v. State*, 607 So. 2d 1184, 1190 (Miss. 1992); *Morris v. State*, 595 So. 2d 840, 844 (Miss. 1991). Only when manifest injustice appears to have resulted from the decision to deny the continuance will this Court reverse on that basis. *Johnson*, 631 So. 2d at 189; *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss. 1993). To determine whether such manifest injustice has resulted from the circuit court's refusal to grant Richardson's motion for a continuance, the chronology of events surrounding his efforts to secure an evaluation by a psychiatrist of his choice must be examined.

¶14. Richardson was indicted on October 25, 1995. His counsel filed a motion for mental examination on November 16, 1995. The motion was granted and the court ordered that Richardson be examined at the Mississippi State Hospital in Whitfield. A written report of the examination was to be furnished to the court and Richardson's attorney. On December 20, 1995, Richardson's attorney received a letter from Dr. Allen Hearne stating that he had been treating Richardson for several years, including through October, November and December.

¶15. On July 24, 1996, the State moved for a continuance because the psychological evaluation of Richardson had not been completed. On September 6, 1996, the court received the evaluation, conducted by Dr. R. McMichael, director of forensic services at Whitfield. Dr. McMichael opined

that:

> It is my opinion, to a reasonable degree of medical certainty, that Mr. Richardson presently has a good rational as well as factual understanding of the nature and object of the legal proceedings against him, and has the ability reasonably to assist his attorney in the preparation of his defense with a reasonable degree of rational understanding.

> It is also my opinion, to a reasonable degree of medical certainty, that Mr. Richardson was not suffering from any major mental disorder at the time of the alleged offense, such that he would not have known the nature and quality of his alleged actions at that time, or would not have known that those alleged actions would be against the law.

¶16. Trial was set for October 28, 1996. On October 11, however, Richardson filed another motion for a second mental examination. This motion was granted following a hearing. The sheriff's office was ordered to transport Richardson to Dr. Krishan Gupta's office -- Richardson's doctor of choice. Payment was to be made by the defendant. Richardson was taken to Dr. Gupta's office, but the doctor refused to do the evaluation because the bill had not been paid as arranged by Richardson's mother. Nothing was said by defense counsel about Dr. Hearne at this point.

¶17. The trial commenced on October 28, 1996. Prior to voir dire, Richardson gave his attorney a letter from Dr. Hearne, dated October 23, 1996, in which he stated that he had tested Richardson on October 16, 1996 and found that:

> Mr. Richardson knows the difference between right and wrong. . . . [H]e was not psychotic at the time of this offense. I believe that he now (one year later) understands the nature of the legal proceedings against him, but I am not sure that he understood the proceedings in September of 1995. . . . Most importantly, I doubt his ability to assist in his own defense with a reasonable degree of rational understanding. I base this conclusion on IQ, and reading and spelling scores at .09, .03 and .09 percent. In other words, 99 percent of the population would be better able to assist in their defense.

¶18. After receiving this letter, Richardson's attorney moved for a continuance. In response to the court's questions, defense counsel admitted that he had been able to discuss parts of the case with Richardson and that Richardson "appear[ed]" to understand the discussions. He asked for an opportunity to question Dr. Hearne about his examination and results concerning Richardson.

¶19. The trial court denied the motion, ruling that Richardson and his mother had engaged in some sort of strategic delay tactic, evidenced by the letter from Dr. Hearne being given to counsel on the day of trial, and also that there was ample time prior to the commencement of trial for counsel to have obtained another mental exam by a doctor of their choice.

¶20. Given the time-frame following the report from the doctor at Whitfield and the fact that Richardson failed to voice his objections to Dr. McMichael's evaluation or take other measures to secure an evaluation by a psychologist of his choice (even after the trial court granted his motion for a second mental exam), it is respectfully submitted there is no evidence that manifest injustice resulted from the trial court's refusal to grant the continuance. Further, Dr. Hearne's report did not provide a basis upon which it could be concluded that Richardson's low IQ would adversely affect his

receiving a fair trial. While Dr. Hearne opined that 99 percent of the population could "better assist" with their defense, he did not conclude that Richardson could not rationally participate in his defense at all. As such, this assignment of error lacks merit and does not entitle Richardson to any relief.

## III.

¶21. Richardson next alleges the trial court erred in denying him a hearing to determine his competency to stand trial. Specifically, Richardson maintains the two medical reports before the trial court -- Dr. McMichael and Dr. Hearne's mental evaluation results -- raised "serious competency concerns." Richardson concedes that he did not request a competency hearing at or before trial; however, he argues the trial court should have ordered a competency hearing *sua sponte*.

¶22. The State responds that no competency hearing was necessary because Richardson had already been evaluated by competent psychologists and found able to assist in his defense and to understand the nature of the proceedings against him.

¶23. Rule 9.06 of the Uniform Circuit and County Court Rules[1] provides in pertinent part that:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.

> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. . . .

Whether a trial court commits reversible error in failing to conduct a competency hearing following a mental examination has been visited by this Court. In *Conner v. State*, 632 So. 2d 1239 (Miss. 1993), that defendant did not request a competency hearing at or before trial. However he argued on appeal the trial court should have ordered a hearing *sua sponte*. As in this case, the State argued in *Conner* that since that defendant failed to request the hearing his claim was procedurally barred. This Court rejected that argument, citing then Rule 4.08(1), *Pate v. Robinson*, 383 U.S. 375, 384 (1966) (holding that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial"), and *Gothard v. State*, 452 So. 2d 889, 893 (Ala.Crim.App. 1984) ("Even where the issue of competency to stand trial has not been raised by defense counsel, the trial judge has an ongoing and continuing responsibility to prevent the trial of an accused unable to assist in his defense"). *Conner,* 632 So. 2d at 1248. This Court noted the critical question was whether "reasonable grounds" existed to believe that Conner was insane, and if so, under Rule 4.08 a competency hearing was required.

¶24. The determination of what is "reasonable" rests largely within the discretion of the trial judge because the judge sees the evidence first hand and observes the demeanor and behavior of the defendant. *Conner*, 632 So. 2d at 1248. The Fifth Circuit Court of Appeals suggested the following test for reviewing a decision to forego a competency hearing: did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted him to the possibility that the defendant could neither understand the

proceedings, appreciate their significance, nor rationally aid his attorney in his defense? *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980). The United States Supreme Court instructed that "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

¶25. Aware that Conner was taking medication for schizophrenia, made a suicide gesture, allegedly "heard voices," had a low average intellectual level, that his counsel complained about getting assistance for trial from the defendant, and that he recalled virtually no facts concerning the facts of the case, this Court still concluded the trial court objectively considered all the facts and circumstances which bore upon Conner's competence to stand trial. *Conner*, 632 So. 2d at 1251. This Court further held there was nothing in the record which led to the conclusion that Conner "could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id.* Thus, there was no error in not ordering a competency hearing.

¶26. The instant case is very similar to Conner in that there is nothing in the record which leads to the conclusion that Richardson could not understand the proceedings, appreciate their significance or rationally aid his attorney in his defense. In fact, he was examined by a doctor at Whitfield who concluded that he had a good rational as well as factual understanding of the nature and object of the legal proceedings against him, and the ability reasonably to assist his attorney in the preparation of his defense with a reasonable degree of rational understanding, and he was not suffering from any major mental disorder at the time of the alleged offense, such that he would not have known the nature and quality of his alleged actions at that time, or would not have known that those alleged actions would be against the law.

¶27. Moreover, the letter from Richardson's own psychologist indicated that he knew right from wrong and could rationally assist in his defense, even if 99% of the population could do it better. Still further, Richardson's attorney told the trial court that he was able to communicate with his client and that his client appeared to understand these communications. There was not even a scintilla of evidence in the record that Richardson suffered from irrational behavior or incompetence to a degree that would affect his right to a fair and just trial. The trial court received no information which should have raised a doubt about the defendant's competence. Hence, the failure to hold a competency hearing was not error.

## IV.

¶28. Richardson next asserts the trial court erred in not granting his motion to suppress his confession, which was obtained in violation of his constitutional rights. He specifically contends that his *Miranda* waiver and confession were involuntary because his I.Q. was low and he was "friends" with the police officer who took the confession. However, the extent of their "friendship" is based on the fact that Richardson and the officer who took his statement went to the same high school, but attended no classes together.

¶29. The State counters that there is absolutely no evidence of a "friendship" between Richardson and the officer who took his confession and that the state hospital report belies Richardson's reliance on the fact that he had a low I.Q. In short, the State maintains that Richardson has shown no bad conduct on the part of the State in obtaining the confession and that his I.Q. is irrelevant in light of no

evidence of coercion by the State. The State's position is well-taken.

¶30. For a confession to be admissible, it must have been given voluntarily and not given as a result of promises, threats or inducements. *Morgan v. State*, 681 So. 2d 82, 86 (Miss. 1996); *Chase v. State*, 645 So. 2d 829, 837-38 (Miss. 1994) (citing *Layne v. State*, 542 So. 2d 237, 240 (Miss. 1989) ). Once a defendant alleges that his confession was coerced, he secures a due process entitlement to a reliable determination that his confession was not given as a result of coercion, inducement, or promises. *Morgan*, 681 So. 2d at 86 (citing *Abram v. State*, 606 So. 2d 1015, 1031 (Miss. 1992)).

¶31. The State shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary. *Morgan*, 681 So. 2d at 86 (citing *Haymer v. State*, 613 So. 2d 837, 839 (Miss. 1993)). The State's burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward. *Chase*, 645 So. 2d at 838 (quoting *Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991)). A trial judge's findings of fact on the issue of admissibility of a confession will not be overturned unless it is clearly erroneous or contrary to the overwhelming weight of the evidence. *Morgan*, 681 So. 2d at 87; *Alexander v. State*, 610 So. 2d 320, 326 (Miss. 1992); [*McGowan v. State*, 706 So. 2d 231, 235 (Miss. 1997)](#).

¶32. This Court has further held that "'...there is no per se rule that mental retardation renders a confession involuntary and inadmissible.'" *Id.* (quoting *Blue v. State*, 674 So. 2d 1184, 1205 (Miss. 1996) (citing *Neal v. State*, 451 So. 2d 743, 756 (Miss. 1984))). *See Gator v. State*, 402 So. 2d 316 (Miss. 1981) (holding confession admissible where defendant's IQ was placed at a range between 43 and 70); *Hancock v. State*, 299 So. 2d 188 (Miss. 1974) (holding confession admissible after *Miranda* warnings were given where defendant had an IQ of 87 and was considered "dull normal"); *Dover v. State*, 227 So. 2d 296 (Miss. 1969) (holding inadmissible confession of forty-five year old defendant with IQ of 60); *Harvey v. State*, 207 So. 2d 108 (Miss. 1968) (holding inadmissible confession of eighteen year old defendant with an IQ of 60 and suffering from brain damage).

¶33. Instead of relying exclusively upon a defendant's mental abilities, those abilities are but "one factor to be considered in determining whether the confession was knowingly, intelligently and voluntarily made." [*McGowan*, 706 So. 2d at 235](#) (citing *Neal*, 451 So. 2d at 756). "'Whether there has been an intelligent, knowing, and voluntary waiver is essentially a factual inquiry to be determined by the trial judge from the totality of the circumstances.'" *Id.* at 753 (quoting *Neal*, 451 So. 2d at 753).

¶34. At the hearing on Richardson's motion to suppress in the case before this Court, the trial judge was informed by the officer who took the confession that he did not know Richardson beyond them attending the same school. They had never attended the same classes, and the officer was not familiar with Richardson in any way. Thus, Richardson's assertion that he was coerced by the officer whom he identified as a friend is not supported by the record. Further, the record does bear out the trial judge's finding that the officer did not offer Richardson any type of help in exchange for his confession. Instead, Richardson asked the officer for help. There was no evidence presented at the motion to suppress hearing of coercion and the trial court's findings of fact in this regard should go undisturbed.

¶35. On this same note, Richardson's contention that his low I.Q. rendered his waiver of *Miranda*

rights and confession involuntary likewise fails. The only evidence the trial court had before it regarding Richardson's mental abilities was the mental evaluation performed by Dr. McMichael. In this report, the doctor opined that Richardson was mentally firm and competent. Even Richardson's own doctor conceded that Richardson was competent, albeit somewhat slow. While Dr. Hearne's letter stated that Richardson scored low on a test, Dr. Hearne admitted still that Richardson knew right from wrong, was aware of the charges against him and could assist in his own defense.

¶36. There was simply no evidence presented to the trial court beyond the uncorroborated numbers in Dr. Hearne's report about Richardson's I.Q. which suggested that he could not give a valid waiver of his *Miranda* rights and subsequently give an intelligent, knowing and voluntary confession. Thus, this assignment of error lacks merit and does not entitle Richardson to any relief.

## V.

¶37. In his final assignment of error, Richardson claims the trial court committed reversible error in excluding Dr. Hearne's testimony at the hearing on the motion to suppress.[2] The State responds the exclusion of Hearne's testimony and report was the appropriate sanction for Richardson (and conceivably defense counsel) withholding the doctor's report until the day of trial. Alternatively, the State argues if the exclusion was error it was harmless in light of the circumstances of the case, i.e., the victim positively identified Richardson as the rapist; the rape was substantiated by medical evidence[3]; and Richardson was seen running from the victim's house by three witnesses and was captured on the scene.

¶38. There is no known rule mandating that a party disclose witnesses it anticipates calling at a suppression hearing. In analyzing Rule 9.04, there is only one subsection that might have come into play, and that is Rule 9.04(A)(4) which provides in pertinent part that:

> [T]he prosecution must disclose to each defendant . . .

> Any reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert.

URCCC 9.04(A)(4).

¶39. Subsection "C" of that same rule intimates that:

> If the defendant requests discovery under this rule, the defendant shall . . . *promptly* disclose to the prosecutor . . .

> 3. Any reports, statements, or opinions of experts, which the defendant may offer in evidence.

URCCC 9.04(C)(3). Rule 9.04(I) instructs that:

> If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

> If during the course of trial, [either party] attempts to introduce evidence which has not been timely disclosed to the [other party] as required by these rules, and the [party] objects to the introduction for that reason, the court *shall* act as follows:
>
> 1. Grant the [party] a reasonable opportunity to interview the newly discovered witness . . .
>
> 2. If, after such opportunity, the [party] claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance . . .

¶40. When Richardson called Hearne as a witness at the suppression hearing, the State objected because his name had not been supplied and the State did not have a rebuttal witness lined up. Counsel for Richardson responded that Hearne's testimony would only go toward the suppression hearing. The trial court was unpersuaded, noting that Hearne was an expert witness whose name was not disclosed as a witness prior to trial. The trial court went on to rule that the "surprise report" from Dr. Hearn was not due to any lack of diligence on the part of defense counsel; nevertheless, he ruled "as a sanction against the defendant" that Hearne would not testify nor would the report be introduced into evidence.

¶41. This was clear error as the trial court explicitly stated that he would forego established case law in dealing with a discovery violation. Additionally, the trial court committed error in not allowing Hearne to testify at the suppression hearing when there is no rule mandating pre-hearing disclosure of witnesses.

¶42. Nevertheless, the pivotal issue is whether this Court can say that Hearne's testimony would not have altered the trial court's ruling beyond a reasonable doubt. It would not have for several reasons. First, the trial court had before it the mental evaluation of the State's psychologist in which it was opined that Richardson was mentally competent at the time of the offense and for trial. Second, Hearne's report did not say that Richardson was mentally infirm, instead it merely questioned his ability to understand the proceedings when he committed the offense and to aid rationally in his defense.

¶43. Furthermore, and more importantly, Hearne's report was considered by the trial court in deciding that a competency hearing was not warranted. The trial court's ruling on that issue is affirmed. Thus, this argument, which relies upon the same, does not appear to warrant different treatment -- even in light of the error.

**VI**.

¶44. Finding no error of a magnitude requiring reversal, the judgment of the lower court is affirmed.

¶45. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF 30 YEARS TO SERVE THE FIRST 15 YEARS, DAY FOR DAY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND THE LAST 15 YEARS ON POST RELEASE SUPERVISION AFFIRMED. COUNT II: CONVICTION OF BURGLARY OF INHABITED BUILDING AND SENTENCE OF 15 YEARS TO SERVE THE FIRST 7-1/2 YEARS, DAY FOR DAY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF**

**CORRECTIONS, AND THE LAST 7-1/2 YEARS ON POST RELEASE SUPERVISION AFFIRMED. SENTENCES ON BOTH COUNTS SHALL RUN CONSECUTIVELY FOR A TOTAL OF 22-1/2 YEARS, DAY FOR DAY.**

**PRATHER, C.J., SULLIVAN, P.J., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. PITTMAN, P.J., CONCURS IN RESULT ONLY.**

1. Formerly Rule 4.08(1) of the Uniform Criminal Rules of Circuit Court Practice

2. Both parties discuss this issue as if Hearne was excluded as a witness at trial and not at a suppression hearing. Hence, their analyses are not on point.

3. However, none of the medical evidence linked Richardson to the crime.